UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT BORECKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOURS FURNITURE COMPANY, INC., d/b/a RAYMOUR & FLANIGAN,<br><br>Defendant. | NO. 17 Civ. 1188<br><br>CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>DEMAND FOR JURY |

Plaintiff Scott Borecki (hereinafter "Plaintiff"), by his undersigned counsel, for this class action Complaint against Defendant Raymours Furniture Company, Inc. d/b/a Raymour & Flanigan, and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Defendant" or "Raymours"), alleges as follows:

## I. INTRODUCTION

1.     Nature of Action.  Plaintiff, individually and as a class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## II. PARTIES

2.     Plaintiff Scott Borecki ("Plaintiff") is a resident of the state of New Jersey.

3.     Defendant Raymours Furniture Company, Inc. d/b/a Raymour & Flanigan ("Defendant" or "Raymours") is a New York corporation with its headquarters in Liverpool, New York.  Raymours does business in brick-and-mortar retail stores in New York, New Jersey, Pennsylvania, Connecticut, Massachusetts, Delaware, and Rhode Island.  Raymours also does online business throughout the United States by way of its web site https://www.raymourflanigan.com/.

## III. JURISDICTION AND VENUE

4. <u>Subject Matter Jurisdiction</u>.  This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.  Furthermore, this Court has original jurisdiction over Plaintiff's claims pursuant to the "Class Action Fairness Act," 28 U.S.C. §§ 1332(d), 1435.  While it is anticipated that neither Plaintiff nor any individual class member's claims exceeds $75,000, the aggregate amount in controversy for the Class exceeds $5 million exclusive of interest and costs, and Plaintiff is a citizen of a different state from Defendant.

5. <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Defendant because it has submitted to New York jurisdiction by registering with the Department of State to do business in this state, and a substantial part of the wrongful acts alleged in this Complaint were committed in New York.

6. <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant resides in this District.  In this regard, Defendant owns and operates many brick-and-mortar stores in this District and has serviced hundreds of consumer class members in this District.

## IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

9. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

10. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

11. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

12. The FCC regulations also "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

13. The FCC confirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of

either section 227(b) or section 227(c) that are committed by third-party telemarketers." *See In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

## V. SHORT MESSAGE SERVICES ("SMS")

14. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

15. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. Short Message Services, or "SMS," is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from cellular telephones.

16. SMS messages are directed to a cellular device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's cellular telephone rings, alerting him or her that a message has been received.

17. As cellular telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

18. Businesses utilizing SMS messaging programs routinely use short codes to send and receive SMS messages.

19. Short codes are special telephone numbers that are significantly shorter than full telephone numbers—generally five to six digits in length.

20. Businesses use short codes to opt-in consumers to their SMS programs as well as to send text message advertisements, such as coupons, offers, and promotions, to customers.

21. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from

coupons to phishing schemes – sent directly to user's cell phones."[1]  In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[2]

22. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because cellular telephone users must pay their service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

23. Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

## VI.  FACTUAL ALLEGATIONS

**A.    Factual Allegations Regarding Defendants**

24. Raymours is the largest furniture retailer in the state of New York.  *See* https://www.raymourflanigan.com/Detailed-History.aspx (last visited January 9, 2017).

25. Part of Raymours' strategy for increasing sales involves the use of bulk advertising through SMS messaging.

26. Raymours makes, either directly or through third parties, SMS calls using automatic telephone dialing system ("ATDS") equipment and software that has the capacity to dial numbers randomly or sequentially as well as dial numbers from lists to cellular telephones whose owners have not provided prior express consent to receive such calls ("Spam Texts"), including Plaintiff.

27. In fact, Raymours is the registered owner of the short code "44998."  *See* https://usshortcodedirectory.com/directory/short-code-44998/ (last visited January 9, 2017); *see also* https://www.raymourflanigan.com/privacy-policy.aspx (last visited January 9, 2017).

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited January 15, 2015).
[2] *Id.*

28. To the extent that Raymours hired third parties to send Spam Texts on its behalf, Raymours is legally responsible for ensuring that third parties' activities comply with the TCPA.

29. The FCC concurs that sellers such as Raymours may not avoid liability by outsourcing telemarketing because doing so "would leave consumers in many cases without an effective remedy for telemarketing intrusions." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6588 (2013).

30. Under the standards outlined in the FCC's Order, and by other Courts interpreting that Order, and to the extent that Raymours hired third parties to send Spam Texts on its behalf, Raymours is directly liable to Plaintiff and members of the Class as well as vicariously liable through theories of agency such as actual authority and ratification.

**B.     Factual Allegations Regarding Plaintiff**

31. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

32. Plaintiff is the account holder of a Verizon cellular telephone, number (973) 975-XXXX.

33. In or around December 2013, Plaintiff purchased a set of bedroom furniture from his local Raymour & Flanigan store.

34. Plaintiff used personally available funds to purchase the furniture and did not use any financing plan offered by Raymours nor did he use a Raymours store credit card.

35. During the course of that transaction, Plaintiff provided his cellular telephone number to Raymours so they could contact him when his furniture was ready to pick up.

36. At no point during the transaction, did Plaintiff provide prior express consent for Raymours to contact him on his cellular telephone number through the use of an ATDS.

37. Furthermore, Plaintiff did not sign up to receive Spam Texts from Raymours.

38. On November 25, 2016, Plaintiff received a Spam Text advertisement on his cellular telephone from, or on behalf of, Raymours.

39. The Spam Text read: "Friday Doorbusters at Raymour & Flanigan – FREE TV or tablet w/ select mattress sets + save up to $700 on furniture – 8am-9pm in stores. Text STOP to cancel."

40. The Spam Text was sent from short code 44998.

41. As previously stated in paragraph 26 above, Raymours owns short code 44998.

42. The Spam Text was sent by, or on behalf of, Raymours.

43. On November 28, 2016, Plaintiff received another Spam Text advertisement on his cellular telephone from, or on behalf of, Raymours.

44. The Spam Text read: "Raymour & Flanigan Cyber Monday: Save 30% or more on select items + Free TV w select mattresses. In store til 9pm or online til midnight. Text STOP to cancel."

45. The Spam Text was sent from short code 44998.

46. As previously stated in paragraphs 26 and 36 above, Raymours owns short code 44998.

47. The Spam Text was sent by, or on behalf of, Raymours.

48. On Friday, January 27, 2017, Plaintiff received two Spam Text advertisements on his cellular telephone from, or on behalf of, Raymours.

49. The first Spam Text read: "Please join us for a VIP event at Raymour & Flanigan in Fairfield on Sat, 1/28 for a FREE gift & special offer!"

50. The second Spam Text read: "For info call the store at 973-227-2868 or get directions http://bit.ly/FAIRNJ You are subscribed to Raymour & Flanigan Alerts. Reply STOP to cancel."

51. Both Spam Texts were sent from a short code, 44998, owned by Raymours.

52. Both Spam Texts were sent by, or on behalf of, Raymours.

53. Plaintiff did not provide prior express written consent to receive Spam Texts on his cellular telephone number from, or on behalf of, Raymours.

54. Plaintiff's privacy has been violated by the above-described Spam Texts from, or on behalf of, Raymours, and they constitute a nuisance as they are annoying and harassing, and the electronic intrusion upon Plaintiff's cell phone constitutes trespass to chattels.

55. Raymours is responsible for sending the above-described Spam Texts.

56. Raymours has sent a significant number of Spam Texts to persons on their cellular telephones in New York and throughout the entire United States.

57. Raymours intends to continue to send similar Spam Texts to persons on their cellular telephones in New York and throughout the entire United States.

58. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Raymours because their privacy has been violated, they were subjected to annoying and harassing Spam Texts that constitute a nuisance, Raymours' intrusion to cell phones constitutes trespass, and they were charged for incoming messages. Furthermore, every Spam Text used some of the recipient's time and mental energy, both of which are precious.

**C.  Factual Allegations Regarding Consumer Complaints**

59. Unfortunately, Plaintiff's experience with Raymours is not unique, as many others have lodged similar complaints after having received Spam Texts from Raymours.

60. For example, numerous consumers have lodged complaints on Twitter regarding Spam Texts from Raymours, including the following:



https://twitter.com/Alex_overload/status/803259443882369024?lang=en (last visited January 9, 2017).



https://twitter.com/emkaymitty/status/803020401546817536?lang=en (last visited January 9, 2017).





https://twitter.com/WarrenLondon/status/789453518084210688?lang=en (last visited January 9, 2017).

## VII.  CLASS ACTION ALLEGATIONS

61.    Class Definition.  Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this case as a class action on behalf of a National Class defined as follows:

> All persons to whom:  (a) Raymours and/or a third party acting on Raymours' behalf, sent one or more text messages; (b) promoting Raymours' products or services; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

Excluded from Class are Raymours, any entity in which Raymours has a controlling interest or that has a controlling interest in Raymours, and Raymours' legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

62.    Numerosity.  The Class is so numerous that joinder of all members is impracticable.  On information and belief, Plaintiff alleges that the Class has more than 100 members.  Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

63.    Commonality.  There are numerous questions of law and fact common to Plaintiff and members of the Class.  These common questions of law and fact include, but are not limited to, the following:

a.    Whether Raymours and/or its affiliates, agents, and/or other persons or entities acting on Raymours' behalf violated 47 U.S.C. § 227(b)(1)(A) by sending Spam Texts to the cellular telephone numbers of Plaintiff and the Class;

b.    Whether Raymours and/or its affiliates, agents, and/or other persons or entities acting on Raymours' behalf knowingly and/or willfully violated 47 U.S.C.

§ 227(b)(1)(A) by sending Spam Texts to the cellular telephone numbers of Plaintiff and the Class, thus entitling Plaintiff and the Class to treble damages;

   c. Whether Raymours is liable for Spam Texts promoting Raymours' products or services made by Raymours' affiliates, agents, and/or other persons or entities acting on Raymours' behalf; and

   d. Whether Raymours and/or its affiliates, agents, and/or other persons or entities acting on Raymours' behalf should be enjoined from violating the TCPA in the future.

  64. <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class.  Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Raymours and are based on the same legal and remedial theories.

  65. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel have interests that are contrary to or that conflict with those of the proposed Class.

  66. <u>Predominance</u>.  Raymours has engaged in a common course of conduct toward Plaintiff and members of the Class.  The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

  67. <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Raymours to comply with the TCPA.  The interest of individual members of the Class in individually controlling the prosecution of separate claims against Raymours is small because the damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue

are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

68. <u>Injunctive and Declaratory Relief Appropriate</u>.  Raymours has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.  Moreover, on information and belief, Plaintiff alleges that the Spam Texts made by Raymours and/or their affiliates, agents, and/or other persons or entities acting on Raymours' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VIII.  FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

69. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

70. The foregoing acts and omissions of Raymours and/or its affiliates, agents, and/or other persons or entities acting on Raymours' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending Spam Texts to the cellular telephone numbers of Plaintiff and members of the Class.

71. As a result of Raymours' and/or its affiliates, agents, and/or other persons or entities acting on Raymours' behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every Spam Text sent to their cellular telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Raymours and/or its affiliates, agents, and/or other persons or entities acting on Raymours' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending Spam Texts, except for emergency purposes, to any cellular telephone numbers in the future.

## IX.  SECOND CLAIM FOR RELIEF
### (Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

73. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

74. The foregoing acts and omissions of Raymours and/or its affiliates, agents, and/or other persons or entities acting on Raymours' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending Spam Texts to the cellular telephone numbers of Plaintiff and members of the Class.

75. As a result of Raymours' and/or its affiliates, agents, and/or other persons or entities acting on Raymours' behalf's knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every Spam Text sent to their cellular telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Classes, pray for judgment against Defendants as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Raymours and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Raymours and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. An award to Plaintiff and the Class of attorneys' fees and costs, as allowed by law and/or equity;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## XI. DEMAND FOR JURY

Plaintiffs demand a trial by jury for all issues so triable.

Dated: New York, New York
February 16, 2017

Respectfully submitted,

By: /s/ Joseph A. Fitapelli
Joseph A. Fitapelli (JAF9058)
Email: jfitapelli@fslawfirm.com
Brian S. Schaffer (BS7548)
Email: bschaffer@fslawfirm.com
Armando A. Ortiz (AO2120)
Email: aortiz@fslawfirm.com
FITAPELLI & SCHAFFER, LLP
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375
Facsimile: (212) 481-1333

Beth E. Terrell
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray
Email: jmurray@terrellmarshall.com
Adrienne D. McEntee
Email: amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528
*Pro hac vice* motions forthcoming

*Attorneys for Plaintiff and the Proposed Class*