```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
SCOTT BORECKI,

                        Plaintiff,

            –against–                                 17-cv-1188 (LAK)

RAYMOURS FURNITURE CO, INC. d/b/a
RAYMOUR & FLANIGAN,

                        Defendant.
------------------------------------------x
```

## MEMORANDUM OPINION

Appearances:

        Beth E. Terrell
        Adrienne D. McEntee
        TERRELL MARSHALL LAW GROUP PLLC

        Joseph A. Fitapelli
        Armando A. Ortiz
        FITAPELLI & SCHAFFER LLP

        *Attorneys for Plaintiff*

        John P. Amato
        Steven R. Aquino
        HAHN & HESSEN LLP

        *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        Defendant Raymours Furniture Company ("Raymour") moves to compel arbitration

and to stay this action pending its completion. Magistrate Judge Sarah Netburn has submitted a report and recommendation (the "R&R") recommending that the motion be denied.[1] Raymour objects to the R&R. It raises a number of alleged factual errors and, more broadly, argues that the magistrate judge erred in characterizing the arbitration clause as narrow and therefore in failing to apply the presumption of arbitrability that arises from broad arbitration clauses.

Many of Raymour's points are immaterial to the outcome, *e.g.*, its contention that the magistrate judge mistakenly found that Borecki was to pick up his furniture when it was ready for delivery. The facts are set forth in the R&R. Accordingly, the Court need not address each and every point raised. In the last analysis, Raymour's objection turns on whether the magistrate judge was correct in concluding that the plaintiff's claim here is not within the scope of the arbitration clause relied upon by Raymour.

The magistrate judge began from the premise that:

> "The Court of Appeals has established a four-prong test to determine whether an action should be sent to arbitration: (1) the court must determine whether the parties agreed to arbitrate; (2) if so, the court must determine the scope of that arbitration agreement (that is, whether the instant dispute falls within that scope); (3) if the plaintiff asserts federal statutory claims, the court must determine whether Congress intended those claims to be nonarbitrable; and (4) if only some, but not all, of the plaintiff's claims are arbitrable, the court must decide whether to stay the balance of the proceedings pending arbitration."[2]

As it is undisputed that the parties entered into an arbitration clause, she proceeded first to classify the clause as narrow and then decided its scope adversely to Raymour. I reach the same result but by a slightly different path.

---

[1] DI 21.

[2] R&R at 4.

Once the existence of an arbitration agreement is established, the presence of a dispute as to its scope requires that the court first decide whether the scope determination is to be made by the court or the arbitrator. Certainly this is vitally important when the court properly concludes that the arbitration clause is narrow, as the magistrate judge did here.[3] For the presence of a narrow clause does not in itself foreclose the possibility that the parties intended that disputes as to the scope of the arbitrable issues be for the arbitrator. And the principle governing whether such a dispute is for the court or an arbitrator is straightforward:

> "Under the FAA, as interpreted by the Supreme Court, the general presumption is that the issue of arbitrability should be resolved by the courts. See [*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1998)]; *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir.2005). Consequently, the issue of whether the parties agreed to arbitrate a matter is to be decided by the courts and not the arbitrators, '[u]nless the parties clearly and unmistakably provide otherwise.' *AT & T Techs.*, 475 U.S. at 649, 106 S.Ct. 1415. *The proper inquiry is whether 'there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator[s].'* *Contec*, 398 F.3d at 208 (quotation omitted)."[4]

Thus, in the absence of "clear and unmistakable evidence from the arbitration agreement," the question of the scope of the arbitration clause is for the courts.

In this case, the arbitration clause reads:

"any claim, dispute, or controversy between you and us that in any way arises from or relates to the goods and/or services you have purchased or are purchasing from us (the 'Purchases'), now or in the past, including the construction or quality of the Purchases; our written or verbal descriptions of the goods and/or services purchased;

---

[3] It perhaps will be signficant in some cases in which the arbitration clause is characterized properly as being "broad" although that need not be decided here.

[4] *Alliance Bernstein Inv. Research and Mgmt, Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (emphasis added).

any advertising, promotion, or statement made concerning the Purchases; any disclosure, handout, offer, negotiation or discussion regarding purchase, discount, price or credit terms; any purchase financing or credit you requested or we offered or provided or helped obtain for you to finance some or all of the Purchases; any attempts we have made or may make to collect debts or sums you owe us; any warranty service contract purchased from us . . . ; any delivery or attempted delivery of items purchased; information we seek from you; or any practice, disclosure, notice, monthly statement or other document relating to such matters. This includes disputes arising from actions or omission prior to the date this Agreement and disputes arising from prior purchases. 'Claim' has the broadest reasonable meaning, and includes initial claims, counterclaims, cross-claims, third-party claims, disputes based upon contract, tort, consumer rights, fraud, deception and intentional torts, constitution, statute, regulation, ordinance, common law and equity . . . ."[5]

The "any claim, dispute or controversy . . . that in any way arises from or relates to" phraseology often is a hallmark of a "broad" arbitration clause. Despite the breadth of that language when considered in isolation, however, one cannot ignore the language that follows in this particular document. The clause in this case in relevant part in fact is limited to "any claim, dispute or controversy . . . that in any way arises from or relates to" "the goods and/or services you have purchased or are purchasing from us . . . including the . . . negotiation or discussion regarding purchase, discount, price or credit terms . . . ." Thus, the arbitration clause, as the magistrate judge concluded, is narrow. Nor is there anything in the arbitration clause that "clearly and unmistakably" indicates that disputes concerning its scope were to be resolved by the arbitrator, at least where, as here, the dispute does not even arguably relate to "the goods and/or services you have purchased or are purchasing from us . . . including the . . . negotiation or discussion regarding purchase, discount, price or credit terms . . . ." Accordingly, the question whether the arbitration clause here in question embraces this particular dispute is a matter for determination by the Court. But that is a matter readily decided here.

---

[5] DI 12 at 3-4.

Arbitration is a creature of contract, and we apply state law in determining the meaning of arbitration clauses even in cases otherwise governed by the Federal Arbitration Act (the "FAA").[6]

The only states the law of either of which even arguably applies to the determination of the scope of the arbitration clause here are New York and New Jersey.[7] And both, in my view, would find that the only reasonable reading of Raymour's arbitration clause is that it is limited to disputes "that in any way arise[] from or relate[] to" "the goods and/or services you have purchased or are purchasing from us . . . including" the various kinds of disputes listed following the quoted language.

Raymour protests that this is too crabbed a reading. It points to the italicized portion of the following language drawn from the clause: claims "that in any way arise[] from or relate[] to" "the goods and/or services you have purchased or are purchasing from us . . . including . . . *information we seek from you* . . . ." It argues that the plaintiff's cell phone number was information Raymour sought from him and that his claim of violations of the Telephone Consumer Protection Act (the "TCPA") therefore comes within the clause. But there are at least two problems with that argument.

---

[6] *E..g., First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Alliance Bernstein,* 445 F.3d at 125.

[7] Paragraph (i) of the arbitration agreement [DI 12, Ex. B], which is not a model of fine drafting, at one point purports to require that all matters be governed by the FAA "and not by any state law concerning arbitration" and contains no other choice of law provision. The FAA requires application of state law in various circumstances, albeit, in this case, not state law concerning arbitration. Accordingly, were there any material difference between the law of New York and New Jersey, this Court first would apply New York choice of law rules and then the law of the relevant state. As there is no material difference, however, this is unnecessary.

First, the argument elides the phrase "the goods and/or services you have purchased or are purchasing from us." The fact that Raymour obtained the cell phone number in the course of selling Mr. Borecki his furniture does not make his TCPA claim one that arises from or relates to the goods and/or services he purchased.

Second, both New York and New Jersey employ the *ejusdem generis* canon in the interpretation of contracts.[8] The canon, a useful guide in discerning intent, holds that "general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned."[9] Here, the words "information we seek from you" upon which Raymour would place such great weight follow the phrase reading claims "that in any way arise[] from or relate[] to" "the goods and/or services you have purchased or are purchasing from us . . . including . . . ." They appear in a list of items expressly given as exemplars of claims that arise from or relate to the good and services purchased. Thus, the proper reading of "information we seek from you" is given content both by the fact that it is included in a list of examples of claims arising from or relating to the goods purchased and from the fact that the other examples in the list so obviously are matters originating, or that might originate, out of Mr. Borecki's purchase of the furniture – such things as the quality of the goods, the financing of their purchase, the representations made to induce the purchase, the delivery of the merchandise, the

---

[8] *E.g., Papa v. Assoc. Indem. Corp.*, 47 N.Y.S.3d 825, 829, 147 A.D.3d 1558, 1561-62 (4th Dept. 2017); *Lend Lease (U.S.) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 22 N.Y.S.3d 24, 29-30, 136 A.D.3d 52, 57 (1st Dept. 2015); *Isetts v. Borough of Roseland*, 835 A.2d 330, 336-37, 364 N.J. Super. 247, 257-58 (App. Div. 2003).

[9] *Isetts*, 835 A.2d at 337, 364 N.J. Super. at 258 (quoting *Abeles v. Adams Eng'g Co., Inc.*, 165 A.2d 555, 560, 64 N.J. Super. 167, 176 (App. Div. 1960), *mod.*, 173 A.2d 246, 35 N.J. 411 (1961)) (internal quotation marks omitted).

vendor's efforts to collect any unpaid balance, and so on. Whatever broader interpretation might be given to the words "information we seek from you" in a quite different context simply would be inappropriate here.

Finally, it is well to note that both New York and New Jersey would apply the rule of *contra proferentem, i.e.,* ambiguous contract language is construed strongly against the drafter, in the circumstances of this case.[10] The arbitration clause at issue here was drafted by Raymour. It was printed by the largest furniture retailer in New York State on the reverse side of a sales ticket for a retail purchase by an ordinary consumer.

Even if the magistrate judge and I both are mistaken in concluding that this arbitration clause plainly does not include plaintiff's claim among the matters the parties agreed to arbitrate, the best that can be said for Raymour's position is that the arbitration clause is ambiguous. But that "best" is not good enough. As Raymour drafted the language and printed it on the reverse side of a sales ticket for a consumer transaction with an individual of obviously trivial bargaining power as compared with that of New York's largest furniture chain, Raymour must bear the consequences of any ambiguity.

---

[10] New Jersey generally applies the rule only in circumstances narrower than New York. *Compare Pacifico v. Pacifico,* 920 A.2d 73, 78, 190 N.J. 258, 267-68 (2007) (noting *contra proferentem* is available only where parties are of unequal bargaining power), *with Arbeeny v. Kennedy Exec. Search, Inc.,* 893 N.Y.S.2d 39, 43, 71 A.D.3d 177, 182-83 (1st Dept. 2010) (using *contra proferentem* to construe employment agreement against drafter), *and Yale Club of N.Y.C., Inc. v. Reliance Ins. Co. (In re Ancillary Receivership of Reliance Ins. Co.),* 863 N.Y.S.2d 415, 416, 55 A.D.3d 43, 44 (1st Dept. 2008) (employing *contra proferentem* in insurance context). *But see Cummins, Inc. v. Atlantic Mut. Ins. Co.,* 867 N.Y.S.2d 81, 83, 56 A.D.3d 288, 290 (1st Dept. 2008) (factoring bargaining power into whether to apply *contra proferentem* in insurance context).

Accordingly, Raymour's motion to compel arbitration and to stay this action [DI 11] is denied.[11]

SO ORDERED.

Dated: November 28, 2017

                                            Lewis A. Kaplan
                                    United States District Judge

---

[11] I have considered Raymour's other points and found them to lack merit. Its objections all are overruled.