UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT BORECKI, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>               -against-<br><br>RAYMOURS FURNITURE COMPANY, INC. d/b/a RAYMOUR & FLANIGAN,<br><br>               Defendant. | Civil Case No.:<br>1:17-cv-01188-LAK-SN |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY EVELYN MANOPLA, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**

MARCUS ZELMAN, LLC

By:   /s/ Yitzchak Zelman
**Yitzchak Zelman, Esq. (YZ5857)
Ari H. Marcus, Esq.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:       (732) 695-3282
Fax:            (732) 298-6256**
*Attorney for the Plaintiff – Proposed Intervenor Evelyn Manopla*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………..........……..……..……..…1

ARGUMENT..........................................................................................................................3

    I.     INTERVENTION SHOULD BE GRANTED AS OF RIGHT............................3

         A.  The Instant Application Is Timely.................................................................4

         B.  Intervenor Has An Interest In This Action......................................................7

         C.  Intervenor's Interest Will Be Impaired By The Disposition
             Of This Action..................................................................................................8

         D.  Intervenor's Interest Cannot Be Adequately Protected By The
             Parties To This Action.....................................................................................11

    II.    PERMISSIVE INTERVENTION IS APPROPRIATE UNDER
          FRCP 24(b)(2)...........................................................................................................11

CONCLUSION…………………………………………………………………............13

# **TABLE OF AUTHORITIES**

*Alea London Ltd. v. Am. Home Servs., Inc.*,
    638 F.3d 768 (11th Cir. 2011)..................................................................................................9

*Authors Guild v. Google, Inc.*,
    No. 05 CIV. 8136 (DC), 2009 WL 3617732 (S.D.N.Y. Nov. 4, 2009)..................................4

*Catanzano by Catanzano v. Wing,*
    103 F.3d 223 (2d Cir.1996)……………………………….............…….…………12

*Cook v. Bates,*
    92 F.R.D. 119, 122 (S.D.N.Y.1981)………………….............……………….………6

*E. End Eruv Ass'n, Inc. v. Town of Southampton*,
    2014 WL 4773989 (E.D.N.Y. 2014)…..…......................................................……..4

*Echevvaria v. Diversified Consultants, Inc.,*
    13 CIV. 4980 LAK AJP, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014)............................9, 10

*Echevvaria v. Diversified Consultants, Inc.*,
    No. 13 CIV. 4980 (LAK), 2014 WL 12783200 (S.D.N.Y. Apr. 22, 2014)..........................10

*Hoffmann–La Roche Inc. v. Sperling,*
    493 U.S. 165, 107 L.Ed.2d 480 (1989)………….…….....................................................8

*Home Ins. Co. v. Liberty Mut. Ins. Co.,*
    1990 WL 188925 (S.D.N.Y. 1990)………........................................................…….6

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    297 F.R.D. 90 (S.D.N.Y. 2013)......................................................................................7

*In re Pandora Media, Inc.*,
    2013 WL 6569872 (S.D.N.Y. Dec. 13, 2013)……………………...................................7

*King v. Time Warner Cable*,
    113 F. Supp. 3d 718 (S.D.N.Y. 2015)...........................................................................10

*Meyer v. Macmillan Pub. Co.*,
    85 F.R.D. 149 (S.D.N.Y. 1980)……………………………....................................4, 6

*Miller v. Silbermann*,
    832 F. Supp. 663 (S.D.N.Y. 1993) ………………….........................…..............6

*Mitchell v. Faulkner,*
    2009 WL 585882 (S.D.N.Y. Mar. 5, 2009)……………………..…….....................…..3

*New York News, Inc. v. Kheel,*
    972 F.2d 482 (2d Cir.1992)…..……………................................…………….12

*NYTDA, Inc. v. City of New York*,
    2014 WL 4274219 (E.D.N.Y. Aug. 28, 2014)………..............................……...5, 6

*S.E.C. v. Everest Management Corp.*,
    475 F.2d 1236 (2d Cir.1972)…………………...............................………...12

*United States v. City of New York,*
    198 F.3d 360 (2d Cir.1999)………………………..............................…….........4

*United States v. Columbia Pictures Indus., Inc.*,
    88 F.R.D. 186 (S.D.N.Y. 1980)…………….............................................…...12

*United States v. Hooker Chemicals & Plastics Corp.*,
    749 F.2d 968 (2d Cir. 1984)………............................................……....11

*United States v. International Business Machs. Corp.,*
    62 F.R.D. 530 (S.D.N.Y.1974)………...........................................…...6

*United States v. Pitney Bowes, Inc.,*
    25 F.3d 66 (2d Cir.1994)……………….......................................……..........4

*Wells Fargo Bank, N.A. v. Wales LLC*,
    2014 WL 4672395 (S.D.N.Y. Sept. 19, 2014)………...............................…....4

*Werbungs Und Commerz v. Collectors' Guild, Ltd.*,
    782 F. Supp. 870 (S.D.N.Y. 1991)………...........................................................5

Statutes and Other Sources

47 USCA § 227(b)(3)..............................................................................................9

3B J. Moore, Federal Practice ¶ 24.09–1[4] (1969)........................................................11

**PRELIMINARY STATEMENT**

Pursuant to Federal Rule of Civil Procedure 24 (a), Evelyn Manopla moves to intervene in this action as of right, as a Plaintiff.  In the alternative, Intervenor moves to intervene permissively as a Plaintiff pursuant to Rule 24(b).  This is an action alleging widespread violations of the Telephone Consumer Protection Act by the Defendant.  Defendant is a leading furniture retailer in the United States and is the largest furniture company on the East Coast.  *See,* Docket 57-1, at 2.  The *Borecki* plaintiff initiated this class action on February 16, 2017, alleging that to market its products and increase its customer volume, Raymours used an automatic telephone dialing system ("ATDS") to send advertising texts to him and a class of similarly situated consumers.  *See id.*  In his Complaint, the *Borecki* plaintiff proposed to certify a class consisting of

> All persons to whom: (a) Raymours and/or a third party acting on Raymours' behalf, sent one or more text messages; (b) promoting Raymours' products or services; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

*See,* Docket 1, ¶61.

On September 29, 2017, Evelyn Manopla commenced her own putative class action against Defendant, based on advertising text messages similar to those received by the *Borecki* plaintiff.  *See, Manopla Complaint,* annexed hereto as Exhibit A.  While the *Borecki* proposed class definition sought to encompass <u>all</u> recipients of Defendant's automated text messages – irrespective of whether those text messages were consented to – Ms. Manopla sought to certify a very different class.  As alleged in Ms. Manopla's Class Complaint, after receiving these unsolicited text messages which concluded with the instruction "Reply STOPRF to cancel", Ms. Manopla dutifully followed these instructions and texted back "STOPRF".  *See,* Exhibit A, at ¶23,

¶25.  Despite doing exactly what the Defendant instructed, these text messages continued unabated for months.  *See,* Exhibit A, at ¶26.  As a result, Ms. Manopla sought to certify the following class:

> All individuals in the United States who received a text message made by or on behalf of Raymour & Flanigan to the individual's cellular telephone through the use of an automatic telephone dialing system, after the individual replied 'Stoprf', 'stop', or 'end', beginning four years prior to the date of this filing.

*See,* Exhibit A, ¶37.

On September 20, 2018, the Defendant filed a Status Report in the *Manopla* action, advising the Court that a proposed class settlement had been reached in this *Borecki* action.  *See,* Defendant's Status Report, annexed hereto as Exhibit B.  The Defendant indicated that it had agreed to certify a class consisting of

> All persons in the United States who between February 2, 2016 and March 22, 2017, received a Text Message (as defined in the Settlement Agreement) from Defendant or any third party acting on behalf of Defendant, and <u>for whom Plaintiff has alleged Defendant did not have prior express written consent</u> to send Text Messages. The Settlement Class is defined to include all persons who could claim to have suffered any injury or could assert any claims as a result of the sending or receipt of Text Messages to the mobile telephone numbers listed on Exhibit 7 to the Settlement Agreement between February 2, 2016 and March 22, 2017.

*See,* Exhibit B, at 1.

As set forth below, Ms. Manopla and Mr. Borecki have very different claims.  Whereas the *Borecki* plaintiff claims that that Raymour never had his express consent to send him automated text messages – something that Raymour expressly denies, a denial which is cited as a key factor in settling the class – Ms. Manopla need not make that argument at all.  This is because Ms. Manopla texted back "STOPRF" as expressly instructed by Defendant, thereby removing any concerns about consent altogether.  Moreover, Ms. Manopla's actions in specifically seeking to stop the text messages, in the manner instructed by Defendant, give her, and the consumers within the putative class, a very strong claim for trebled damages – a claim that Mr. Borecki simply does

2

not have. *See e.g., Echevvaria v. Diversified Consultants, Inc.,* No. 13 CIV. 4980 LAK AJP, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014), report and recommendation adopted, No. 13 CIV. 4980 (LAK), 2014 WL 12783200 (S.D.N.Y. Apr. 22, 2014). As a result, Mr. Borecki cannot have standing to represent the same class that Ms. Manopla does, a class comprised of individuals who received automated text messages after specifically texting Defendant "STOPRF".

Ms. Manopla does not seek to intervene in this class with any intention of 'blowing up' the proposed class settlement. Rather, Ms. Manopla solely seeks to ensure that this Court protects her and those limited individuals encompassed within her proposed class definition by carving them out of this class settlement, since the *Manopla* putative class members have a very different (and far stronger claim) than the *Borecki* class members. Given that Mr. Borecki is not similarly situated to the *Manopla* class members, he cannot possibly represent these class members even if he wanted to. As reflected below, the Intervenor's interests, along with those of her putative class members are not, and cannot be, adequately protected by the plaintiffs in this action.

Intervenor's Complaint and proposed Order are annexed hereto as Exhibits.

## ARGUMENT
### III. INTERVENTION SHOULD BE GRANTED AS OF RIGHT.

Intervenor satisfies each element of the four-part test for determining when intervention as of right under Rule 24(a) is warranted. Under Rule 24(a) of the Federal Rules of Civil Procedure, "the Court must permit intervention by a non-party if it satisfies a four-part test." *Mitchell v. Faulkner,* No. 07 Civ. 2318(DAB), 2009 WL 585882, at *4 (S.D.N.Y. Mar. 5, 2009). Under this test,

> "An applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."

Case 1:17-cv-01188-LAK-SN Document 62 Filed 09/29/18 Page 8 of 17

*Wells Fargo Bank, N.A. v. Wales LLC*, 13 CIV. 6781 PGG, 2014 WL 4672395 (S.D.N.Y. Sept. 19, 2014), citing, *United States v. City of New York,* 198 F.3d 360, 364 (2d Cir.1999).

The Intervenor meets each element of this test for intervention as of right.

### E. The Instant Application Is Timely.

Intervenor respectfully submits that the first element of timeliness is satisfied in this action. Whether a motion to intervene is timely is "within the sound discretion of the trial court from all the circumstances." *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir.1994); *E. End Eruv Ass'n, Inc. v. Town of Southampton*, CV 13-4810 AKT, 2014 WL 4773989 (E.D.N.Y. Sept. 24, 2014). "Timeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). Delay is insufficient alone to mandate denial of the motion to intervene. *See, Meyer v. Macmillan Pub. Co.*, 85 F.R.D. 149, 150 (S.D.N.Y. 1980). Instead, "whether a motion to intervene is 'timely' is driven heavily by an analysis of prejudice: whether the parties to the case will be prejudiced by intervention, and whether the proposed intervenor will be prejudiced by being kept out of the litigation." *Authors Guild v. Google, Inc.*, No. 05 CIV. 8136 (DC), 2009 WL 3617732, at *2 (S.D.N.Y. Nov. 4, 2009).

Here, Ms. Manopla has filed the instant application for intervention within eight days of being notified by the Defendant of the proposed class settlement in this action, which tries to sell out her chances at trebled damages based on a defense inapplicable to her. The Defendant does not have the same consent defense to the *Manopla* class claims as it does to the *Borecki* claims.

4

At the same time, the *Borecki* class members do not have the same claim for trebled damages that the *Manopla* class members have. However, the proposed class settlement makes no distinction between those class members who texted back "STOPRF" and those who did not. The settlement does not offer more compensation to those class members. Nor could it, seeing as how Mr. Borecki never texted back 'STOPRF" and could therefore not represent class members who did. The instant application was then immediately brought before this Court, allowing several days in between given the Jewish holidays of Sukkot on September 24 and 25 which prevented Ms. Manopla's counsel from working.

Numerous courts have this Circuit have found Rule 24 applications to be timely under such circumstances. In *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870 (S.D.N.Y. 1991), the plaintiff argued that the intervention motion was untimely because it was filed nearly two years after the Intervenor was aware of its interest in the case. *See, id.* at 874. The *Werbungs* court nevertheless found the motion for intervention to be timely: "Because Permal owns the collateral for the letter of credit securing the bond, it did not have a direct interest in the action until Werbungs made its motion to compel payment of the bond. In light of all the circumstances of this case, therefore, the court finds that Permal's motion to intervene is timely." *Id.* As in the *Werbungs* holding, Ms. Manopla herein only had a direct interest in the instant action once the Defendants sought to settle a class encompassing her claims, without adequately protecting her and the sub-group of class members similarly situated to her. The instant application was then immediately brought.

A similar conclusion was recently reached in *NYTDA, Inc. v. City of New York*, 11-CV-1836 NGG RER, 2014 WL 4274219 (E.D.N.Y. Aug. 28, 2014). In *NYTDA*, the intervenor had notice of its interests from the beginning of the suit, commenced three years earlier. The court

5

nevertheless found that the intervenor "did not have notice of a need to intervene until after the court's August 28, 2013 ruling that NYTDA lacked standing to represent those interests." *See id.* In approving the application to intervene, the *NYTDA* court further considered the relative prejudice to both parties if intervention was granted or denied.

As is *Werbungs* and *NYTDA* the instant application is timely, where it is brought eight days after the need for intervention became apparent. Only once the Defendant and Mr. Borecki sought to settle a class encompassing Ms. Manopla's claims, without adequately protecting her and the sub-group of class members similarly situated to her, did Ms. Manopla have sufficient interest in the instant action to intervene.

It is further respectfully submitted that the instant application for intervention is timely, where the Defendants cannot establish that they have suffered any prejudice due to the short delay in filing the instant application. "The most important criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Miller v. Silbermann*, 832 F. Supp. 663, 669 (S.D.N.Y. 1993); *Home Ins. Co. v. Liberty Mut. Ins. Co.,* 1990 WL 188925, at *2; *United States v. International Business Machs. Corp.,* 62 F.R.D. 530, 541–42 (S.D.N.Y.1974). Absent any such prejudice, the motion for intervention will usually be deemed timely. *See Home Ins. Co. v. Liberty Mut. Ins. Co.,* 1990 WL 188925, at *2 (S.D.N.Y. 1990); *Cook v. Bates,* 92 F.R.D. 119, 122 (S.D.N.Y.1981); *Meyer v. MacMillan Publishing Co., Inc.*, 85 F.R.D 149, 150 (S.D.N.Y. 1980).

The Defendants will be unable to establish any prejudice that it suffered by the Defendant's short delay in filing the instant application. Defendants have only recently filed their motion for approval of class settlement, which has yet to be approved by this Court. Following such approval, if forthcoming, the settlement would still be subject to objections by putative members of the class

action. Ms. Manopla is allowed to intervene in this action, her sole participation would be to file a motion, asking this Court to carve out a very small portion of the class, who have divergent interests from the remainder of the class. At that point, Ms. Manopla intends to continue with her separately filed class action. On the reverse, should the instant application for intervention be denied, Ms. Manopla and the class members similarly situated to her would be represented by a class representative who does not share their claims, and whose claims have defenses to which Ms. Manopla and her class members are not subject to. These individuals would otherwise be forced to individually opt up of this class settlement, and give up their ability to band together as a class and pool their resources, in order to pursue their claims for trebled damages against the Defendant; again, a claim that Mr. Borecki cannot pursue on their behalf.

### F. Intervenor Has An Interest In This Action.

Intervenor's interest in this action is clear. The parties in this action seek to settle out Ms. Manopla's claims, and the claims of the class members encompassed in her proposed class definition. Rule 24 requires the intervenor to show that denial of intervention would, "as a practical matter, impair or impede the applicant's ability to protect its interest." *In re Pandora Media, Inc.*, 12 CIV. 8035 DLC, 2013 WL 6569872 (S.D.N.Y. Dec. 13, 2013). Here, if Ms. Manopla's application is denied, her ability to proceed with her TCPA claims and requests for trebled damages will be lost forever. So will all the class members who - like Ms. Manopla but unlike Mr. Borecki - texted back 'STOPRF' to the Defendant. Instead, their claims will be resolved in a class action settlement that does not take into account the fact that (1) these class members are free from a potentially dispositive defense of consent that the remaining class are subject to, and that (2) these class members have a claim to trebled damages not shared by the remaining class members. *See, In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 297 F.R.D. 90, 97 (S.D.N.Y.

2013)("If the Court were to decline to intervene, Cancan's interest would be extinguished for no compensation, which would eliminate Cancan's ability to protect its interest.....In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation")(internal citation omitted).

### G. **Intervenor's Interest Will Be Impaired By The Disposition Of This Action**.

The Intervenor's interest in seeking trebled damages will clearly be impaired by the disposition of this action. Mr. Borecki has agreed to a class settlement where the class members, optimistically, will receive between $10.00 - $100.00 each, regardless of how many automated text messages they received. *See,* Docket 57-3, at 16. This makes no distinction between those class members who texted back 'STOPRF' and those who did not. As the court overseeing the resolution of this class action, this court "has both the duty and the broad authority to exercise control over a class action." *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 107 L.Ed.2d 480 (1989). That control should be exerted over a class settlement that does not adequately protect a subgroup of class members, who have stronger and different claims than the remainder of the class.

The parties to this action have repeatedly referenced the issue of the class members' consent as a leading factor in the decision to settle this class action for the amount ultimately agreed by the parties. As stated in the parties Motion to Certify the Class, "Raymours also contends that it had prior written express consent to send texts to at least some, if not all, of the Settlement Class Members." *See,* Docket 57-1, at 14, Docket 57-3, at 17. The Settlement Agreement similarly makes clear that this consent issue was a factor in the settlement negotiations:

> Class Counsel are mindful of the inherent problems of proof under, and possible defenses to, the claims alleged in the Action, including, but not limited to **Defendant's defenses that it had consent to send the texts**...

*See,* Docket 57-4, at 3.

While Defendant may have a defense of consent against some or all of the members of the *Borecki* class, it does not have that same defense against <u>any</u> of the members of the *Manopla* proposed class. This is because, by definition, each of the *Manopa* class members have specifically revoked any such consent in the manner prescribed by Defendant: by texting back 'STOPRF'. As a result, they are not similarly situated to the *Borecki* class members, given that a major defense available to the Defendant here is simply not available to the Defendant in *Manopla*.

Similarly, the *Manopla* class members have a far greater likelihood at obtaining trebled damages for Defendant's willful violations of the TCPA than do the *Borecki* class members who did not text back 'STOPRF'. The TCPA provides a basic statutory award of $500.00 for each call placed in violation of the statute: "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State ... (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *See,* 47 USCA § 227(b)(3)(B). The statute also contains a provision allowing for trebled damages, if the court finds that "the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection…." 47 USCA § 227 (b)(3). "The TCPA is essentially a strict liability statute" and as such, calling parties are liable even for innocent violations of the Act. *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir.), <u>cert. denied</u>, 132 S.Ct. 553, 181 L.Ed.2d 397 (2011). While the $500.00 per call is warranted for basic violations of the law, the trebled damages available under the TCPA are appropriate when the violation is somewhat more egregious.

Where - as in the case of the *Manopla* class members but not the *Borecki* class members - the unwanted communications continued after the caller was told to stop, the courts have typically awarded trebled damages under the TCPA. This very Court did so in *Echevvaria v. Diversified*

9

*Consultants, Inc.,* 13 CIV. 4980 LAK AJP, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014). In that action, after receiving a collection call intended for another debtor, the *Echevvaria* plaintiff called the collection agency, advised that it had the wrong number and requested the calls to her cell phone cease. The collection agency called the *Echevarria* plaintiff's phone an additional 27 times after that date. The Honorable Magistrate Judge Peck accordingly awarded the plaintiff $500.00 for the first call and $1,500.00 for each remaining call, finding that each call placed after that the referenced conversation was placed in willful violation of the statute. This Court then adopted that Report and Recommendation, and affirmed the grant of $1,500.00 per call for each call placed after the do-not-call request. *Echevvaria v. Diversified Consultants, Inc.*, No. 13 CIV. 4980 (LAK), 2014 WL 12783200, at *3 (S.D.N.Y. Apr. 22, 2014).

Treble damages were similarly awarded by the Honorable Judge Alvin Hellerstein in *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 726–27 (S.D.N.Y. 2015) under similar facts. In that action, the plaintiff signed up for cable services with TWC and in doing so, consented to receive automated calls. *See id.,* at 722. TWC then placed calls to the *King* plaintiff, mistakenly attempting to reach a different TWC customer. In October of 2013, the *King* plaintiff called TWC and told them to stop calling her cellular phone. However, TWC continued to place these calls. In finding that treble damages were properly awarded for each of the calls following the October 2013 phone conversation, the *King* court found that "After October 3, 2013, TWC had knowledge through its agent that King did not consent to further robo-calls. Therefore, Defendant's subsequent calls were knowing violations and treble damages are appropriate." *Id.,* at 727.

As these cases indicate, the Plaintiff has a very real chance at obtaining $1,500.00 per call, whereas Mr. Borecki and the other class members who did not text back 'STOPRF' could never

seek such damages.  As a result, Mr. Borecki could never seek to represent Ms. Manopla, or the individuals encompassed in her class definition.

### H. Intervenor's Interest Cannot Be Adequately Protected By The Parties To This Action.

It is glaringly obvious that the Intervenor's interests are not being adequately protected by Mr. Borecki, because Mr. Borecki cannot possibly protect interests he himself does not have. Under Rule 24, an intervenor need only show that the parties' representation "may be inadequate, and the burden of making that showing should be treated as minimal." *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 986 (2d Cir. 1984), citing, 3B J. Moore, Federal Practice ¶ 24.09–1[4] (1969).  That showing is easily made here.

In this action, the class representative has made absolutely no effort to treat differently those class members who texted back 'STOPRF' from those class members who did not, or to obtain additional compensation for those class members.  Class counsel instead lumps all of these class members together, ignoring the divergent claims they have, and the fact that a major potential defense (the class member's consent to the calls) is simply unavailable to the Defendant as to Ms. Manopla's specific sub-group of class members.  Even if Mr. Borecki wanted to carve out a special sub-class for class members who texted back 'STOPRF', he could not, since he would lack standing to represent such a class.  It is therefore respectfully submitted the Intervenor be permitted to participate in this action, where her interests cannot possibly be adequately represented by the

### IV. PERMISSIVE INTERVENTION IS APPROPRIATE UNDER FRCP 24(b)(2).

Intervenor seeks to intervene in this action on the alternative ground that such intervention is permissive under FRCP 24(b)(2).  The three-part test for intervention under this Rule has oft been stated as:

 (1) "timely application"; (2) "a question of law or fact in common" between the "applicant's claim or defense and the main action"; (3) a determination that the intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties."

*United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y. 1980).

Generally, a district court has broad discretion to grant or deny a request for permissive intervention. *Catanzano by Catanzano v. Wing,* 103 F.3d 223, 234 (2d Cir.1996); *Securities and Exchange Commission v. Everest Management Corp.,* 475 F.2d 1236, 1240 (2d Cir.1972) ("Rule 24(b) necessarily vests broad discretion in the district court to determine the fairest and most efficient method of handling a case with multiple parties and claims."). A court deciding a motion for permissive intervention under Rule 24(b) should consider (1) the relation of the proposed intervenor's claims to the pending case, (2) the timeliness of the motion, and (3) the effect of intervention on the parties to the case. *Catanzano,* 103 F.3d at 234; *New York News, Inc. v. Kheel,* 972 F.2d 482, 487 (2d Cir.1992).

Ms. Manopla has already established the timeliness of its application, as set forth extensively above. Similarly, Ms. Manopla's claim is similar to those of Mr. Borecki's in the instant action, in that they both received similar unsolicited text messages from the Defendant and that Mr. Borecki seeks to extinguish Ms. Manopla's claims as part of his class settlement. *See,* Exhibit B, at 2. Finally, it is respectfully submitted that the original parties will not be unduly prejudiced by the intervention of the Intervenor. Intervenor does not seek to delay this action, but rather seeks to participate in this action for the limited purpose of carving out those class members who texted 'STOPRF' to the Defendant. The parties to this action cannot possibly represent those class members, as they have zero standing to do so. Once that issue is decided, Intervenor intends

to continue the litigation of her claims in her separately filed class action, and Mr. Borecki can carry on with his claims-made class.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the instant application to intervene in this proposed class action be granted. As a member of the putative class, Intervenor has received the same advertising messages as those received by Mr. Borecki and the members encompassed within his class. However, (1) not being subject to the same consent defense as many of those class members, and (2) having a claim for trebled damages that Mr. Borecki does not have, Ms. Manopla - and the limited subgroup of class members she seeks to represent - have divergent interests from those of the class members represented by Mr Borecki. Those interests are not being adequately represented the class representative in this action, nor could they be. Finally, Ms. Manopla only seeks to participate in this action for the limited purpose of carving out a class of those individuals who texted the Defendant to 'STOPRF', which will not delay or unduly prejudice the parties to this action  Accordingly, it is respectfully requested that the Intervenor be allowed to intervene in this action under the alternative grounds provided by FRCP 24(a)(2) or FRCP 24(b)(2).

Dated: September 28, 2018

            Respectfully submitted,

            By:  /s/ Yitzchak Zelman
            Yitzchak Zelman, Esq. (YZ5857)
            Marcus Zelman, LLC.
            *Attorney for the Plaintiff – Proposed Intervenor*
            *Evelyn Manopla*