UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT BORECKI, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>RAYMOURS FURNITURE COMPANY, INC., d/b/a RAYMOUR & FLANIGAN,<br><br>    Defendant. | NO. 1:17-cv-01188 (LAK) (SN) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. iv

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.    THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED....................... 1

        A.    The Proposed Settlement Class Should be Certified. .................................... 3

        B.    The Settlement is Procedurally Fair and Should Be Approved.................................... 3

        C.    The Settlement is Substantially Fair and Meets the *Grinnell* Standards for Class
Action Settlement Approval. ............................................................................... 3

            1.    Litigation through trial would be complex, costly and long (*Grinnell* Factor 1). .... 4

            2.    The reaction of the class has been positive (*Grinnell* Factor 2). .............................. 6

            3.    Discovery has advanced far enough to allow the Parties to responsibly resolve the
case (*Grinnell* Factor 3). ............................................................................... 8

            4.    Plaintiff would face real risks if the case proceeded (*Grinnell* Factors 4 and 5)...... 8

            5.    Certifying a class and maintaining it through trial would not be simple (*Grinnell*
Factor 6). ....................................................................................................... 10

            6.    Defendants' ability to withstand a greater judgment is not assured (*Grinnell* Factor
7). ............................................................................................................... 10

            7.    The settlement fund is substantial in light of the possible recovery and the attendant
risks of litigation (*Grinnell* Factors 8 and 9). .................................................. 11

            8.    The Rule 23(e)(2) considerations favor approval. .................................................. 13

        D.    Class Members Received the Best Notice Practicable. .............................................. 14

    II.    THE COURT SHOULD AWARD THE SERVICE AWARD TO PLAINTIFF. ............. 15

    III.    THE COURT SHOULD AWARD RUST CONSULTING ITS FEES. ........................ 17

    IV.    CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE
APPROVED. ............................................................................................................. 17

A.   The Percentage of the Fund Method Should Be Applied Here. ................................. 18

B.   The *Goldberger* Factors Support an Award of One-Third of the Common Fund...... 21

    1.   Class Counsel's time and labor................................................................. 21

    2.   The Litigation's Magnitude and Complexity........................................... 23

    3.   Risks of Litigation................................................................................... 23

    4.   Quality of the Representation ................................................................. 25

    5.   The Fee is Reasonable in Relation to the Settlement.............................. 26

    6.   Public Policy Considerations ................................................................. 27

C.   The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund. ............................................................................................... 27

D.   Class Counsel Are Entitled To Reimbursement Of Their Litigation Expenses. ........ 30

CONCLUSION.................................................................................................................... 30

## TABLE OF AUTHORITIES

**CASES**

*ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) .................................................... 9, 23

*Accounting Outsourcing, LLC. v. Verizon Wireless,* No. 03 Civ.161,
   2007 WL 7087615 (M.D. La.  Aug. 2, 2007) .......................................................... 21

*Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ............................... 20

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) .................................... 10, 24

*Allen v. JPMorgan Chase Bank, N.A.*, 13 Civ. 8285, ECF No. 98 (N.D. Ill. Nov. 3, 2015) ........ 20

*Anthony v. Franklin First Financial*, 844 F. Supp. 2d 504 (S.D.N.Y. 2012) .............................. 22

*Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174 (E.D.N.Y. 1999) ........................... 20, 26

*Beckman v. Keybank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) .......................................... 23, 28, 29

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ........................... 5, 9, 25

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ................... 18

*CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07 Civ. 05456, ECF No. 424
   (N .D. Ill. Oct. 27, 2011) ........................................................................... 21

*Chesbro v. Best Buy Stores, L.P.,* C10-774 (RAJ), ECF No. 107
   (W.D. Wash. Sept. 19, 2014) ......................................................................... 22

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................. 2, 3, 4

*Cummings v Sallie Mae*, 1:12 Civ. 9984 ECF No. 91 (N.D. Ill. May 30, 2014) ......................... 20

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................... 7

*Dakota Medical, Inc. v. RehabCare Group, Inc.*, No. 14 Civ. 02081 (DAD)(BAM),
   2017 WL 4180497  (E.D. Cal. Sept. 21, 2017) ....................................................... 20

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................... 29

*De Los Santos v Millward Brown Inc.*, 13 Civ. 80670 (DPG), ECF No. 84
   (S.D. Fla. Sept. 11, 2015) ......................................................................................... 20

*Desai et al. v. ADT Sec. Servs., Inc.*, Case No. 1:11 Civ. 1925, ECF No. 243
   (N.D. III. June 21, 2013) ...................................................................................... 20, 26

*Dial Cop. V. News Corp.*, 317 F.R.D. 426 (S.D.N.Y. 2016) .................................................... 6, 16

*Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) ......................................... 16

*Duban v. Diversified Mortgage Investors*, 87 F.R.D. 33 (S.D.N.Y. 1980) ................................... 7

*Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405 (CM), 2015 WL 10847814
   (S.D.N.Y. Sept. 9, 2015) ......................................................................................... 23

*Flores v. Anjost*, No. 11 Civ. 1531 (AT), 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) .......... 8, 15

*Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC) (RLE),
   2015 WL 3916161 (S.D.N.Y. April 28, 2015) ........................................................... 29

*Fonseca v. Dircksen & Talleyrand Inc.,* No. 13 Civ. 05124 (RA)(SN), ECF No. 189
   (S.D.N.Y. Jan. 17, 2018) (Netburn, J.) ............................................................... 18, 19

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y.2005) .................................... 11, 19, 27

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07 Civ. 05953, ECF No. 146
   (N.D. Ill. Nov. 1, 2010) ............................................................................................ 21

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ....................................................... 27

*Gehrich v. Chase Bank USA, N.A.*, 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) .. 12, 13

*Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596
   (S.D.N.Y. Mar. 24, 2008) ........................................................................................ 11

*Golderberger v. Intergrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ..................................... passim

*Green v. Service Master*, No. 07 Civ. 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ... 10, 24

*Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13 Civ. 21016,
ECF No. 95 (S.D. Fla. June 24, 2015) ...................................................................... 20

*Hadel et al. v. Gaucho LLC et al.*, No. 15 Civ. 3706 (RLE), hr'g tr.
(S.D.N.Y. June 30, 2016) ........................................................................................ 28

*Hadel v. Gaucho, LLC*, 193 F. Supp. 3d 243 (S.D.N.Y. 2016) ............................................ 26, 29

*Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925
(D. Mont. Feb. 11, 2015) ........................................................................................ 20, 26

*Hanley v. Fifth Third Bank*, No. 1:12 Civ. 01612, ECF No. 86 (N.D. Ill. Dec. 23, 2013) ........... 21

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) .......................................................................................... 5

*Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06 Civ. 01156, ECF No. 225
(N.D. Ill. Oct. 6, 2009) ............................................................................................ 21

*Holtzman v. CCH*, No. 1:07 Civ. 07033, ECF No. 33 (N.D. Ill. Sept. 30, 2009) ....................... 21

*In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2012 WL 345509
(S.D.N.Y. 2012) ...................................................................................................... 15

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......... 4, 11

*In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................... 12, 24

*In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901, 2014 WL 7399039
(S.D.N.Y. Dec. 29, 2014) ......................................................................................... 6

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014) ................. 24, 27

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) ........................................ 20, 26

*In re Elan Sec. Litig.*, 385 F. Supp. 2d 363 (S.D.N.Y. 2005) ............................................... 23

*In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151 (S.D.N.Y. 2011) ....................... 2

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557 (CM),
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................ 22

*In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) .............................. 11

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ.1262 (RWS), 2002 WL 31663577 (S.D.N.Y.
    Nov. 26, 2002) ........................................................................................ 20

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ................................................ 19, 26

*In re Oxford Health Plans, Inc.*, 383 F. App'x 43 (2d Cir. 2010) ....................................... 7

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132 (2d Cir. 1998) .......................... 2

*In re PaineWebber Ltd., P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d
    Cir. 1997) ........................................................................................ 3, 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05 MD 1720
    (MKB)(JO), 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) ......................... 13

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ..................................... 18, 27

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..................................... 8, 29

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ............................. 8

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d
    Cir. 1986). ........................................................................................ 25

*In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,
    Case No. 1:13-md-02493-JPB-JES, ECF No. 1214 (N.D.W.V. June 12, 2018) ...................... 12

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ................................................................ 13

*Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037
    (E.D.N.Y. Apr. 27, 2016) ........................................................................ 11

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) .......................................................... 12

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*, No. 08 Civ. 3610 (CLW),
  2015 WL 2383358 (D.N.J. May 18, 2015) ........................................................................ 21

*Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09 Civ. 00531 (S.D. Ill. Sept. 8, 2010) .................. 21

*Lushe v. Verengo Inc.*, No. CV 13-07632 AB (PJWx), ECF Nos. 135-1,
  137 (C.D. Cal. May 2, 2016) ....................................................................................... 12, 22

*Luster v. Wells Fargo Dealer Services, Inc.*, No. 15 Civ. 01058 (TWT),
  ECF No. 80 (N.D. Ga. Nov. 8, 2017) .................................................................................... 12

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................ 19, 25, 26

*Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473
  (S.D. Cal. June 20, 2016) ...................................................................................................... 12

*Markos v. Wells Fargo Bank, N.A.*, No. 15 Civ. 01156 (LMM), 2017 WL 416425
  (N.D. Ga. Jan. 30, 2017) ....................................................................................................... 12

*Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12 Civ. 00215, ECF No. 63
  (N.D. Ill. Jan. 16, 2014) ........................................................................................................ 21

*Martinez v. Medicredit, Inc.*, No. 4:16 Civ. 01138 (ERW), 2018 WL 2223681
  (E.D. Mo. May 15, 2018) ...................................................................................................... 20

*Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216
  (S.D.N.Y. Dec. 13, 2011) ...................................................................................................... 16

*Melito v. American Eagle Outfitters, Inc.*, No. 14 Civ. 2440 (VEC), 2017 WL 3995619
  (S.D.N.Y. Sept. 11, 2017) ............................................................................................. 3, 6, 7, 23

*Mohamed v. Off Lease Only, Inc.*, No. 15 Civ. 23352 (MGC), ECF No. 382
  (S.D. Fla. June 27, 2019) ...................................................................................................... 11

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* No. 06 Civ.4270 (PAC),
  2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...................................................................... 19

*Newman v. Stein*, 464 F.2d 689 (2d Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521,
34 L.Ed.2d 488 (1972) ............................................................................. 11

*Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08 Civ. 05959,
ECF No. 116 (N.D. Ill. Dec. 21, 2011) ..................................................... 21

*Parker v. Jekyll & Hyde Entm't Holdings,* LLC, No. 08 Civ. 7670 (BSJ)(JCF),
2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............................................... 28

*Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637 GRB, 2015 WL 4608655
(E.D.N.Y. July 30, 2015) ................................................................... 26, 29

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL 651640
(S.D.N.Y. Feb. 24, 2012) .......................................................................... 29

*Raniere v. Citigroup, Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ...................................... 22

*Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639 (E.D. Pa. Dec. 17, 2018) ............... 9

*Rose v. Bank of Am. Corp.*, No. 5:11 Civ. 02390 (EJD), 5:12 Civ. 04009 (EJD), 2014 WL
4273358 (N.D. Cal. Aug. 29, 2014) .......................................................... 12

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999) ............................................ 19

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124
(S.D.N.Y. Apr. 16, 2012) .......................................................................... 29

*Sewell v. Bovis Lend Lease*, No. 09 Civ. 6548 (RLE), ECF No. 70 (S.D.N.Y. Feb. 24, 2012) ..... 7

*Souza v. Carmine's Broadway Feast Inc.*, No. 15 Civ. 04049 (SN), ECF No. 34
(S.D.N.Y. Feb. 16, 2018) (Netburn, J.) ............................................. 18, 19, 26

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352
(N.D. Cal. Mar. 10, 2014) .......................................................................... 12

*Strougo ex rei. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ... 18

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ....................................... 5, 19

*Suarez v. Rosa Mexicano Brands Inc.*, No. 16 Civ. 5464 (GWG), 2018 WL 1801319
(S.D.N.Y. April 13, 2018) ................................................................ 19, 29

*Sykes v. Harris*, No. 09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ....... 17, 29

*Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003) ................................ 8

*Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM),
2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ........................................................ 4

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014) ................................ 20

*Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM),
2010 WL 4877852  (S.D.N.Y. Nov. 30, 2010) ........................................................ 2

*Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668 (D. Wyo. 2011) .................... 10, 24

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229 (S.D. Ill. 2011) ........ 10, 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) ................................ passim

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ........................... 5, 9, 25

*West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079 (2d Cir. 1971) ................................ 5

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................ 6

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998
(S.D.N.Y. Oct. 2, 2013) ........................................................................ 29

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134
(S.D.N.Y. Sept. 23, 2014) ...................................................................... 29

*Zorrilla v. Carlson Rests., Inc.*, No. 14 Civ. 2740 (AT), 2018 WL 1737139
(S.D.N.Y. April 9, 2018) ..................................................................... 19, 26

**STATUTES**

47 U.S.C. § 227 ................................................................................ 1

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................... 14

Fed. R. Civ. P. 23(e)(1)............................................................................. 14

**TREATISES**

*Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61 (2010) ......................................... 2

William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. 2016 Supp.)..... 2

**INTRODUCTION**

Scott Borecki ("Plaintiff") submits this memorandum of law in support of his Motion for Final Approval of Class Action Settlement brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 against Raymours Furniture Company Inc. ("Defendant" or "Raymours"). The settlement requires Raymours to pay Four Million Two Hundred Fifty Thousand Dollars and Zero Cents ($4,250,000.00) to establish a non-reversionary settlement fund for the benefit of Plaintiff and Settlement Class Members (hereinafter "Class Members") who received unwanted text messages.

On February 22, 2019, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notices be sent to Class Members, and setting the date for the final fairness hearing. McEntee Decl. ¶ 29; **Exhibit ("Ex.") B**, Preliminary Approval Orders. The Postcard Notice and Email Notice reached at least 95% of Class Members, who have reacted with overwhelming support: only five (5) Class Members filed exclusions and zero (0) Class Members objected. **Ex. C**, Declaration ("Decl.") of Samantha Ries ("Ries Decl.") ¶¶ 11, 14, 18, 19. With such overwhelming support, and for the reasons below, the Court should grant final approval.

**ARGUMENT**

**I.    THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED.**

A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005). Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See id.* (observing there

1

is a "strong judicial policy in favor of settlements, particularly in the class action context") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. 2016 Supp.) (citing cases).

Approval of a class action settlement is within the Court's discretion, which "should be exercised in light of the general judicial policy favoring settlement." *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 159 (S.D.N.Y. 2011) (citation omitted). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

"Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Id*; s*ee also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement"). Because the settlement is both procedurally and substantively fair, it should be approved.

**A.   The Proposed Settlement Class Should be Certified.**

The Settlement Class conditionally certified by the Court on February 22, 2019 satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(3). For the reasons set forth in Plaintiff's Motion for Preliminary Approval (*see* ECF Nos. 57; 81) and the discussion of the *Grinnell* factors below, the Court should grant final certification.

**B.   The Settlement is Procedurally Fair and Should Be Approved.**

The instant settlement is procedurally fair because it was reached after Class Counsel: 1) conducted a thorough investigation into the claims and defenses, 2) underwent significant motion practice and actively litigated the matter for well over a year, 3) participated in significant discovery (including written and deposition discovery), and 4) engaged in arm's length negotiation with Defendant, including a private mediation with an experienced class action mediator, Bennett G. Picker. McEntee Decl. ¶¶ 3 – 22; *see, e.g., In re PaineWebber*, 171 F.R.D. at 125 (stating there is a "strong initial presumption of fairness" where a settlement is reached after extensive arm's-length negotiations); *Melito v. American Eagle Outfitters, Inc.*, No. 14 Civ. 2440 (VEC), 2017 WL 3995619, at *11 (S.D.N.Y. Sept. 11, 2017) (finding settlement procedurally fair where parties conducted meaningful discovery and utilized the services of a mediator). At all times, the Parties' settlement discussions were arms-length and adversarial in nature. In light of Class Counsel's extensive discovery efforts and their work negotiating fair relief for the Class Members, the settlement is entitled to a presumption of procedural fairness, and should be approved.

**C.   The Settlement is Substantially Fair and Meets the *Grinnell* Standards for Class Action Settlement Approval.**

The settlement is substantially fair because its terms are fair, adequate, and reasonable pursuant to the analytical framework set forth by the Second Circuit in *Grinnell*, 495 F.2d at 448,

*abrogated on other grounds by Goldberger v. Intergrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The *Grinnell* factors in determining whether a settlement is substantially fair are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the [d]efendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 463. "The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice," rather than applying the factors in a systematic manner. *Id*. at 468. Here, the *Grinnell* factors weigh in favor of final approval.

### 1. *Litigation through trial would be complex, costly and long (Grinnell Factor 1).*

"To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation." *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949, at *6 (S.D.N.Y. Sept. 10, 2013). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no exception.

Here, continued litigation of this matter would cause additional expense and delay. Although the Parties had conducted significant discovery up to this point, substantial work remained to prepare the case for trial. For instance, Plaintiff would need to conduct additional third-party discovery, including, but not limited to, the deposition of Raymours' text messaging vendor. McEntee Decl. ¶ 16. Moreover, while Plaintiff obtained text messaging data, this data had not yet been fully evaluated by his expert, meaning that expert witness reports and expert

depositions still would have to take place. *Id.* ¶ 24. Further, substantial briefing still remained, such as Plaintiff's motion for class certification, Raymours' likely motions for summary judgment on the Automated Telephone Dialing System ("ATDS")[1] issue and for decertification in the event the Court certified the Class. *Id.* ¶ 23. Further, in the event the Class recovered a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could delay the Class recovery for years, further reducing its value. *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Along these same lines, it is likely that Raymours would appeal any judgment creating additional risk and delay. Thus, there was substantial risk that any victory at trial would be hollow, leaving class members with nothing. *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)  ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). In contrast, the settlement makes substantial monetary

---

[1] The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2. *The reaction of the class has been positive (Grinnell Factor 2).*

The fact that the vast majority of Class Members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate. *Wright v. Stern*, 553 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008). Here, Class Members have shown an enthusiastic response to the settlement. The notice sent to the Class Members explained the allocation formula, an estimate of each Class Members' award, and informed Class Members of their right to object or to exclude themselves from the settlement. *See* **Ex. C**, Ries Decl., **Ex. A** Class Postcard Notice at 2; **Ex. B**, Email Notice at 1; **Ex. C**, Website Notice at ¶ 10.

Out of 231,191 Class Members who were sent notice, **only five (5)** Class Members excluded themselves from the settlement, and **zero (0)** Class Members objected. *See Dial Cop. V. News Corp*., 317 F.R.D. 426, 431 (S.D.N.Y. 2016) ("the absence of objections by the class is extraordinarily positive and weighs in favor of settlement"). Moreover, 31,592 Class Members returned timely claim forms, resulting in a 13.7% participant rate, which exceeds the typical claim rate in similar TCPA cases. *See, e.g.*, *Melito*, 2017 WL 3995619 at *12 (granting final approval where roughly six percent of class claimed); *In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval less than a 3.4% participate rate).

In addition to the 31,592 timely claims, 307 Class Members submitted claims after the deadline, but within a month and a few days. Class Counsel ask that the Court accept these claims, which represent a small fraction of the total maximum settlement fund. "Courts have the equitable power to include late-filed claims as part of a settlement." *In re Citigroup Inc. Sec. Litig.*, No. 07 Civ 9901, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014). In determining whether to permit

late claimants to participate in a settlement, courts consider four factors:  (1) "the danger of prejudice"; (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *In re Oxford Health Plans, Inc.*, 383 F. App'x 43, 45 (2d Cir. 2010) (quoting *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489 (1993)).

Here, Defendant will not be unduly prejudiced if the Court permits the late claimants' participation. Because this is a non-reversionary settlement, the inclusion of these late claimants does nothing to increase the amount that Defendant must pay, and does not appreciably reduce the awards of those who submitted timely claims. In addition, both the length of the delay and its impact on judicial proceedings are minimal. Each of the late claimants' claim forms was postmarked or received within approximately a month of the deadline to submit claims, and all prior to the September 10, 2019 final fairness hearing. *See, e.g., Duban v. Diversified Mortgage Investors*, 87 F.R.D. 33, 43 (S.D.N.Y. 1980) (permitting claims filed more than a month after the claim bar date to participate in the settlement in the interest of fairness; noting that "[c]ounsel responsible for complying with the notice requirements had obvious difficulty in locating all potential class members[,]" and "[i]t [was] apparent to the court that notices were delayed in reaching members who had relocated."); *Sewell v. Bovis Lend Lease*, No. 09 Civ. 6548 (RLE), ECF No. 70 (S.D.N.Y. Feb. 24, 2012) (permitting late claimant to participate in settlement where he learned of the settlement "not through proper notice, but via his colleagues").

Such a favorable reaction from Class Members supports final approval. *See Melito*, 2017 WL 3995619, at *11 (approving despite nine exclusions and five objections); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (affirming district court's conclusion that 18

objections out of 27,833 class members was a "small number"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 62 (S.D.N.Y. 2003) (approving settlement where only 19 out of forty thousand claimants lodged objections).

### 3. Discovery has advanced far enough to allow the Parties to responsibly resolve the case (Grinnell Factor 3).

The third *Grinnell* factor questions "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). The extensive discovery completed by the Parties easily meets this standard. *See* McEntee Decl. ¶¶ 12-16. Moreover, the Parties reached this settlement only after seeking and obtaining the necessary texting data to determine the proper class scope, and the Class is limited to only the Class Members identified in **Exhibit 7** of the Settlement Agreement. *Id.* As such, this factor favors settlement approval.

### 4. Plaintiff would face real risks if the case proceeded (Grinnell Factors 4 and 5).

Courts "assess the risks of litigation against the certainty of recovery offered by the Settlement" when evaluating the risks of establishing liability. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008). Courts recognize that "[l]itigation inherently involves risks" and that regardless of the plaintiff's perceived strength of a case, liability is "no sure thing." *Wal-Mart Stores*, 396 F.3d at 118. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Flores v. Anjost*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *5 (S.D.N.Y. Jan. 29, 2014) (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)).

Here, Plaintiff risked losing on the merits. Raymours repeatedly argued that it had sufficient consent for all individuals who received text messages throughout the matter. McEntee Decl. ¶ 23. Moreover, Raymours argued, and appealed, the issue of whether the arbitration

agreement on the back of the sales tickets provided to its customers bars this matter from class treatment. *Id*. Raymours' appeal of this Court's Order denying its Motion to Compel Arbitration was at all times pending and fully briefed before the Second Circuit. In the event the Second Circuit reversed the District Court's decision, then Plaintiff would be barred from collective treatment of his TCPA claim. *Id*. Raymours also argued that its text messaging system would not be found to be an ATDS, which is a required element for Plaintiff's claim. *Id*. This issue has become much more significant following the D.C. Circuit Court's decision in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). *Id*. In the event Plaintiff could not demonstrate the texting platform used by Raymours was an ATDS, his case would be completely lost. *See Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639, 651 (E.D. Pa. Dec. 17, 2018) (granting defendant's motion summary judgment on ATDS issue).

Even if Plaintiff prevailed at trial, he would have difficulty collecting any judgment since Raymours faced exposure at trial of over $100 million,[2] particularly if Raymours were to declare bankruptcy. While Raymours is a successful company, it is not a publicly traded company with the resources to both litigate the matter to verdict, and if Plaintiff succeeds, to pay a judgment exceeding $100 million. Thus, there was substantial risk that any victory at trial would be hollow, leaving class members with nothing. *See Chas. Pfizer*, 314 F. Supp. at 743-44 ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *see also Eastman Kodak Co.*, 603 F.2d at 309 (2d Cir. 1979) (reversing $87 million judgment). The settlement alleviates these concerns, and weighs in favor of approval.

---

[2] The TCPA provides for $500 per unauthorized text message, and a maximum of $1,500 per text message for willful or knowing violations. See 47 U.S.C. § 227(b)(3).

### 5.   *Certifying a class and maintaining it through trial would not be simple (Grinnell Factor 6).*

The risk of obtaining class certification and maintaining it through trial also supports final approval. Had a settlement not been reached, Raymours would likely contend that some class members provided consent, and that individualized issues of consent preclude certification. Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare, e.g., Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), *and Versteeg v. Bennett, Deloney & Noyes, P.C.,* 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number"), *with Green v. Service Master*, No. 07 Civ. 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (in a fax blast case, "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification."), *and Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification."). As such, this weighs in favor of approval.

### 6.   *Defendants' ability to withstand a greater judgment is not assured (Grinnell Factor 7).*

The settlement provides substantial recovery for Class Members. Nevertheless, even if Raymours could afford to pay more, a "defendant's ability to withstand a greater judgment, standing alone does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228

F.R.D. 174, 186 (W.D.N.Y.2005) (quoting *Holocaust Litig.*, 80 F. Supp. 2d at 178 n. 9). This factor is neutral and does not preclude the Court from approving the settlement.

### 7. *The settlement fund is substantial in light of the possible recovery and the attendant risks of litigation (Grinnell Factors 8 and 9).*

The determination of whether a settlement amount is reasonable does not involve the use of a "mathematical equation yielding a particularized sum." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483–84 (S.D.N.Y. 2009) (citation omitted). "[T]he dollar amount of the settlement by itself is not decisive in the fairness determination…." *In re Paine Webber*, 171 F.R.D. at 131. Instead, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). "Where the settlement provides a meaningful benefit to the class, settlements have been found reasonable." *Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement is reasonable. *Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

The $4,250,000.00 non-reversionary settlement provides much more than "a fraction of the potential recovery" to Class Members. Class Members will each receive a settlement award (net of attorneys' fees, costs, service award, and claims administration fees) of approximately $75.19. McEntee Decl. ¶ 37; Ries Decl. ¶ 26, **Ex. E**. This amount is well in line with, or otherwise exceeds, other court-approved TCPA settlements. *See Mohamed v. Off Lease Only, Inc.*, No. 15 Civ. 23352 (MGC), ECF No. 382 (S.D. Fla. June 27, 2019) (granting final approval where claimants received

$50); *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, Case No. 1:13-md-02493-JPB-MJA, ECF No. 1214 (N.D.W.V. June 12, 2018) (finally approving settlement where class members would receive approximately $38); *Luster v. Wells Fargo Dealer Services, Inc.*, No. 15 Civ. 01058 (TWT), ECF No. 80 (N.D. Ga. Nov. 8, 2017) (granting final approval where settlement provided between $33 per claimant); *Lushe v. Verengo Inc.*, No. CV 13-07632 AB (PJWx), ECF Nos. 135-1, 137 (C.D. Cal. May 2, 2016) (finally approving settlement in which eligible claimants would receive $52); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Rose v. Bank of Am. Corp.*, No. 5:11 Civ. 02390 (EJD), 5:12 Civ. 04009 (EJD), 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (approving $30 per claimant); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (approving settlement with payments estimated to be between $20 and $40; actual payments were $46.98); *Markos v. Wells Fargo Bank, N.A.*, No. 15 Civ. 01156 (LMM), 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement that provides a cash award of approximately $24.00 per class member, calling the settlement an "excellent result"); *Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher).

As one court noted in approving an unrelated TCPA class settlement, "[t]he essential point here is that the court should not reject a settlement solely because it does not provide a complete victory to plaintiffs, for the essence of settlement is compromise." *Gehrich v. Chase Bank USA, N.A.*, 12 C 5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016) (approving $34 million TCPA

with a per-claimant recovery of $52.50) (*citing Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)). Here, as in *Gehrich,* "[i]ndividual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted . . . texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation. [Raymours], for its part, buys peace and mitigates risk." *Id.* Thus, the settlement achieved in the instant action is more than reasonable and supports final approval.

### 8.   *The Rule 23(e)(2) considerations favor approval.*

The considerations outlined in the newly revised Rule 23(e)(2) "add to, rather than displace, the *Grinnell* factors" and "there is significant overlap between the Grinnell factors and the Rule 23(e)(2)(C-D) factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05 MD 1720 (MKB)(JO), 2019 WL 359981, at *13 (E.D.N.Y. Jan. 28, 2019).

The first consideration is the adequacy of Plaintiff's and his counsel's representation of the Class. In granting preliminary approval of the settlement, the Court found that the "Named Plaintiff and its counsel are adequate representatives of the Settlement Class." ECF No. 83 ¶ 4. Plaintiff committed significant time to this case and supports the settlement. Class Counsel, who have a great deal of experience litigating and settling TCPA class action cases, also wholeheartedly support the settlement. This consideration therefore supports approval.

The second consideration also supports approval because the settlement was negotiated at arms' length. There are no "red flags" of potential collusion, such as a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or an agreement that any fees not awarded will revert to Defendant rather than be added to the class fund.

The third consideration also supports settlement. As discussed above, the $4,250,000 Settlement Fund is more than adequate to warrant approval, particularly in light of the costs, risks and delay of trial and appeal.

Plaintiff addresses the reasonableness of the requested attorneys' fees below.

Finally, the fourth consideration—whether the proposed settlement treats class members equitably relative to each other—also supports approval. The method for distributing the Settlement Fund to Class Members is simple, straightforward, and equitable. After Court-approved deductions for administrative costs, attorneys' fees and costs, and the class representative award, the remaining funds will be divided equally among the valid claims submitted for cellular and residential number on which calls were claimed to be received.

### D.  Class Members Received the Best Notice Practicable.

The notice process satisfies Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice process also satisfies Rule 23(e)(1), which requires that notice be "reasonable" – *i.e.* – it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114.

This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practical under the circumstances, and constitute due and sufficient notice to all individuals entitled thereto. *See* **Ex. B**, Preliminary Approval Order at ¶ 9. The notice program was implemented by Rust Consulting, the approved Claims Administrator, as detailed in the McEntee and Ries Declarations. *See* McEntee Decl. ¶ 41; **Ex. C**, Ries Decl. ¶¶ 3-21.

The notice program has been successful. Rust Consulting estimates that notices reached at least 95% of Class Members through either the physical mailing or email notices. **Ex. C**, Ries Decl. ¶ 11. This is in addition to the settlement website that at all times provided information about the settlement, and copies of key documents in this matter. *Id.* ¶ 13. Moreover, the notice materials

14

were written in plain English, and included key dates for Class Members to object and attend the final fairness hearing. *Id*., **Exhs. A-C**. In sum, the notice program approved by the Court and implemented by Rust Consulting provided due and adequate notice and satisfies the requirements of due process. *Id*. ¶ 21.

## II.      THE COURT SHOULD AWARD THE SERVICE AWARD TO PLAINTIFF.

Pursuant to the Settlement Agreement, Class Counsel request the approval of a service award in the amount of $40,000 to Plaintiff Scott Borecki for the services he rendered to Class Members. *See* **Ex. A**, Settlement Agreement ¶ 4.3; McEntee Decl. ¶¶ 38-40. This award is reasonable given the significant contributions Plaintiff made to advance the prosecution and resolution of this lawsuit. Moreover, the notice informed Class Members that Plaintiff would seek the above service award, and zero (0) Class Members objected to the award. McEntee Decl. ¶ 41; **Ex. C**, Ries Decl., **Ex. A,** Class Postcard Notice at 1; **Ex. B**, Email Notice at 1; **Ex. C**, Website Notice at ¶ 14.

Service awards "are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risk incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Anjost*, 2014 WL 321831, at *10; *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2012 WL 345509, *6 (S.D.N.Y. 2012).

Here, Plaintiff was instrumental to the initiation and prosecution of this action, and expended considerable time and effort to assist Class Counsel with this case. His services included, but were not limited to: informing counsel of the facts initially and as the case progressed; assisting with the drafting of the complaint, providing information about his interaction with Raymours, responding to written discovery, sitting for his deposition, and in the

event settlement was not reached, testifying at trial. McEntee Decl. ¶¶ 38-40; **Ex. D**, Declaration of Scott Borecki ("Borecki Decl.") ¶¶ 9-10. Moreover, Plaintiff rejected an individual settlement offer of $60,000, and a $15,000 offer of judgment for the benefit of the Class. McEntee Decl. ¶ 39; **Ex. D**, Borecki Decl. ¶ 11. In Class Counsel's opinion, Plaintiff's decision to reject these significant settlement offers, and run the risks associated with Rule 68 offers of judgment, was instrumental to achieving the class-wide resolution here. Had Plaintiff accepted either one of these awards, Class Members would have received nothing. Additionally, Plaintiff's name has been identified in various legal news outlets, such as Law360.com, leagle.com, and sdnybusinesslitigationblog.com, as his information and this lawsuit are readily available through simple internet and Google searches. McEntee Decl. ¶ 40.

Service awards on an individualized basis have generally ranged from $2,500 up to $85,000. *See Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001). We submit that this case is similar to the matter of *Matheson v. T-Bone Restaurant, LLC* where Judge Batts approved an incentive award of $45,000.00 to one of the named plaintiffs. No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011). In *Matheson*, counsel sought a $45,000 service award because the plaintiff rejected two individual settlement offers of $30,000 and $62,500. *See* **Ex. G**, Swartz Decl. in Support, ECF No. 49 ¶ 27. Like in *Matheson*, had Plaintiff accepted either one of these offers, then Class Members would have received nothing. Similar service awards have been approved where a plaintiff undertakes such risk and responsibility in prosecuting a case on behalf of a class. *See, e.g.*, *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, ECF No. 1214 (in TCPA class action, awarding $30,000 and $35,000 to two class representatives who rejected substantial offers of judgment); *Dial Corp.*, 317 F.R.D. at 439 (awarding $50,000 to each of six class representatives); *Sykes v. Harris*, No.

09 Civ. 8486 (DC), 2016 WL 3030156, at *18-*19 (S.D.N.Y. May 24, 2016) (awarding $30,000 to each class representative in part because "[i]ncentive awards are appropriate when considering the sacrifice of [p]laintiffs' anonymity").

Class Counsel appreciate that the requested service award is on the higher end of service awards. However, given Plaintiff's involvement here, especially his rejection of such significant offers of settlement and judgment, we respectfully submit these actions justify the $40,000 service award that has precedent in this District.

## III.   THE COURT SHOULD AWARD RUST CONSULTING ITS FEES.

The Court previously appointed Rust Consulting ("Rust") to act as the Settlement Claims Administrator in this settlement. *See* **Ex. B**, Preliminary Approval Order ¶ 6. Rust is responsible for, among other things, preparing and sending the Court-approved notice, preparing and sending CAFA notices, processing returned claim forms, calculating individual settlement amounts, issuing checks, and tax reporting. **Ex. A**, Settlement Agreement ¶¶ 5.1-5.7. Rust's updated estimate of the total cost to administer this matter is $387,961.55. **Ex. C**, Ries Decl. ¶ 25. This increase from Rust's initial estimate (based on a 3% claim rate, which is typical in TCPA settlements) is due to the much higher claim rate of 14% and the increased costs with processing these claimants. *Id.* ¶¶ 22-24. As a result, we request that the Court approve Rust's fees and costs.

## IV.   CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED.

Plaintiff's unopposed motion for Final Approval includes a request for attorneys' fees in the amount of one-third (33.3%) of the non-reversionary $4,250,000 Settlement Fund ($1,416,666.67), along with reimbursement of up to $30,000.00 in litigation costs. **Ex. A**, Settlement Agreement ¶ 4.2. The Settlement Agreement and Court-approved notice documents informed Class Members that Class Counsel would seek the above fees and costs from the Court.

McEntee Decl. ¶ 43; **Ex. C**, Ries Decl., **Ex. A,** Class Postcard Notice at 1; **Ex. B**, Email Notice at

1; **Ex. C**, Website Notice ¶ 14. To date, zero (0) Class Members objected to these requests. **Ex. C**,

Ries Decl. ¶ 19.

### A. The Percentage of the Fund Method Should Be Applied Here.

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than

himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*

*Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749, 62 L. Ed. 2d 676 (1980); *Goldberger*,

209 F.3d at 47. Although there are two ways to compensate attorneys for successful prosecution

of statutory claims, the lodestar and percentage of the fund method, "[t]he trend in this Circuit is

toward the percentage method." *Wal-Mart Stores*, 396 F.3d at 121. This Court has previously

applied the percentage method over the lodestar method when ruling on attorneys' fees in a class

action context. *See* **Ex. H**, *Souza v. Carmine's Broadway Feast Inc*., No. 15 Civ. 04049 (SN), ECF

No. 34 (S.D.N.Y. Feb. 16, 2018) (Netburn, J.); **Ex. I**, *Fonseca v. Dircksen & Talleyrand Inc.,* No.

13 Civ. 05124 (RA)(SN), ECF No. 189 (S.D.N.Y. Jan. 17, 2018) (Netburn, J.).

There are several reasons why courts prefer the percentage method over the lodestar

method. First, the percentage method "directly aligns the interests of the class and its counsel"

because it provides an incentive to attorneys to resolve the case efficiently and to create the largest

common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121;

Second, the percentage method is closely aligned with market practices because it "mimics

the compensation system actually used by individual clients to compensate their attorneys." *In re*

*Sumitomo Copper Litig*., 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Strougo ex rei.*

*Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ("[T]he

percentage method is consistent with and, indeed, is intended to mirror, practice in the private

marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.").

Third, it "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121. In that regard, the percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("Once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.").

Finally, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie*, 166 F.3d at 461 n.4. Indeed, this Court and other district courts in the Second Circuit have consistently awarded one-third of the fund. *See* **Ex. H**, *Souza*, ECF No. 34 (Netburn, J.) (granting one-third of gross fund); **Ex. I**, *Fonseca,* ECF No. 189  (Netburn, J.) (granting the requested one-third of the net fund); *see, e.g.*, *Suarez v. Rosa Mexicano Brands Inc.*, No. 16 Civ. 5464 (GWG), 2018 WL 1801319 (S.D.N.Y. April 13, 2018) (approving one-third of $3.6 million settlement fund); *Zorrilla v. Carlson Rests., Inc.*, No. 14 Civ. 2740 (AT), 2018 WL 1737139 (S.D.N.Y. April 9, 2018) (approving one-third of $19.1 million settlement fund); *In re Marsh ERISA Litig.,* 265 F.R.D. 128, 149 (S.D.N.Y. 2010) (awarding one-third of the recovery); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Frank*, 228 F.R.D. at 188–89 (awarding 38.26%); *Strougo*, 258 F. Supp. 2d at 262 (33.33%); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370–71 (S.D.N.Y. 2002) (awarding 33.33%; noting

"modest multiplier of 4.65 [was] fair and reasonable"); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (33.33%); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8%); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ("In this district alone, there are scores of . . . cases where fees . . . were awarded in the range of 33.3 percent of the settlement fund.").

Moreover, district courts across the country have awarded thirty three percent of the common fund in TCPA cases. *See, e.g., Martinez v. Medicredit, Inc.*, No. 4:16 Civ. 01138 (ERW), 2018 WL 2223681, at *4-*5 (E.D. Mo. May 15, 2018) (awarding one-third of $5,000,000 as attorney's fees); *Dakota Medical, Inc. v. RehabCare Group, Inc.*, No. 14 Civ. 02081 (DAD)(BAM), 2017 WL 4180497, at *9-*10 (E.D. Cal. Sept. 21, 2017) (awarding one-third of $25 million settlement); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding fees in the amount of $15 million, or one-third of the $45 million common fund); *Allen v. JPMorgan Chase Bank, N.A.*, 13 Civ. 8285, ECF No. 98 (N.D. Ill. Nov. 3, 2015) (awarding one-third fee award on $10,200,000 settlement); *De Los Santos v Millward Brown Inc.*, 13 Civ. 80670 (DPG), ECF No. 84 (S.D. Fla. Sept. 11, 2015) (awarding one-third of $11 million settlement for attorneys' fees); *Cummings v Sallie Mae*, 1:12 Civ. 9984 ECF No. 91 (N.D. Ill. May 30, 2014) (awarding one- third of the $9,200,000 fund for fees); *Desai et al. v. ADT Sec. Servs., Inc*., Case No. 1:11 Civ. 1925, ECF No. 243 (N.D. III. June 21, 2013) (awarding fees of one-third of $15 million fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13 Civ. 21016, ECF No. 95 (S.D. Fla. June 24, 2015) (awarding fees and costs of one-third of the $4,500,000.00 settlement fund); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (33% of $3.3 million ceiling award); *Landsman &*

*Funk, P.C. v. Skinder-Strauss Associates*, No. 08 Civ. 3610 (CLW), 2015 WL 2383358, at *9 (D.N.J. May 18, 2015) (awarding fees of one-third of $625,000 settlement fund).[3]

Based on the foregoing, Plaintiff respectfully submits that the Court should follow the trend in the Second Circuit and use the percentage of fund method in this common fund case.

**B.   The *Goldberger* Factors Support an Award of One-Third of the Common Fund.**

In determining the reasonableness of fee applications, courts consider the following six factors set forth by the Second Circuit in *Goldberger*, 209 F.3d at 50: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Here, all of the *Goldberger* factors favor approval.

### 1.   *Class Counsel's time and labor*

Class Counsel spent significant effort to achieve the total $4,250,000 settlement. In performing these tasks, Class Counsel together expended 1,199.85 hours, which are reasonable for a complex case like this one. McEntee Decl. ¶ 63; Fitapelli Decl. ¶ 14. Class Counsel's work included, but was not limited to, substantial briefing regarding Raymours' Motion to Compel Arbitration, the appeal associated with Raymours' appeal of this arbitration Order, discovery of over 190,000 documents and substantive ESI databases, party depositions, third-party discovery,

---

[3] Additional TCPA rulings awarding one third for fees follow: *see, e.g.*, *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12 Civ. 00215, ECF No. 63 (N.D. Ill. Jan. 16, 2014) (awarding one-third fee); *Hanley v. Fifth Third Bank*, No. 1:12 Civ. 01612, ECF No. 86 (N.D. Ill. Dec. 23, 2013) (awarding one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08 Civ. 05959, ECF No. 116 (N.D. Ill. Dec. 21, 2011) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07 Civ. 05456, ECF No. 424 (N .D. Ill. Oct. 27, 2011); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07 Civ. 05953, ECF No. 146 (N.D. Ill. Nov. 1, 2010) (same); *Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06 Civ. 01156, ECF No. 225 (N.D. Ill. Oct. 6, 2009) (same); *Holtzman v. CCH*, No. 1:07 Civ. 07033, ECF No. 33 (N.D. Ill. Sept. 30, 2009) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 1:07 Civ. 00066, ECF No. 39 (N.D. Ill. Dec. 6, 2007) (same); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09 Civ. 00531 (S.D. Ill. Sept. 8, 2010) (awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC. v. Verizon Wireless,* No. 03 Civ.161, 2007 WL 7087615, at *2 (M.D. La.  Aug. 2, 2007) (awarding in excess of 35% of the common fund plus costs).

and preparing for and attending class mediation. *See* McEntee Decl. ¶¶ 3-16. Moreover, as Class Counsel anticipate spending additional time in the future preparing for the fairness hearing and administering the settlement, and the requested fee award is also meant to compensate for that time. *Id*. ¶ 63; Fitapelli Decl. ¶ 19; *Karic*, 2016 WL 1745037, at *8 (fee award also compensates counsel for time required to administer the Settlement Fund in the future).

The rates used in calculating Class Counsel's lodestar are consistent with the rates approved for Class Counsel in past years, and also less than rates more recently approved for other members of the plaintiff's bar. *See Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (applying plaintiffs' counsel's hourly rates of $650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals for purposes of lodestar crosscheck); *In re Hi-Crush Partners L.P. Sec. Litig*., No. 12 Civ. 8557 (CM), 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving attorney billing rates ranging from $425 to $825 per hour).

Moreover, Class Counsel's billing rates have been approved by other district courts. *See, e.g., Lushe*, ECF No. 137 (approving TMLG rates charged for attorneys and staff members ranging from $100.00 to $850.00); *Chesbro v. Best Buy Stores, L.P.*, C10-774 (RAJ), ECF No. 107 (W.D. Wash. Sept. 19, 2014) (approving rates charged for attorneys and staff members ranging from $100.00 to $760.00); *Sukhnandan*, 2014 WL 3778173, at * 14-*15 (approving $425 per hour for partner Joseph A. Fitapelli in 2014); *Anthony v. Franklin First Financial*, 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012) (approving $350 per hour for partners Brian S. Schaffer and Joseph A. Fitapelli in 2012).[4] Class Counsel's qualifications include, among other things, speaking and presenting at many bar association and CLE events. Fitapelli Decl. ¶¶ 6-8.

---

[4] Moreover, as of November 13, 2014, the date of the last hourly matter undertaken by F&S, for instance, the partner rate at F&S was $500.00 per hour. Fitapelli Decl. ¶ 17. Therefore, in 2019, 5 years later, the hourly rates requested are reasonable.

### 2.   *The Litigation's Magnitude and Complexity*

The second *Goldberger* factor, which addresses "the magnitude and complexities of the litigation," also supports approval of the requested fee. *Goldberger*, 209 F.3d at 50. As noted above, this litigation was complex and multifaceted, spanning a novel arbitration motion, a related appeal, and substantive discovery. *See supra* sections (I)(C)(1),(4),(5). Moreover, the complexity of what constitutes an ATDS for TCPA liability has been continuously evolving since *ACA*, 885 F.3d 687, further adding to the complexity of establishing liability. Simply stated, this was not a straightforward case where a defendant admits liability and settles early on – at all times Raymours had denied liability and has had experienced counsel vigorously dispute Plaintiff's claims. Such complexity supports approval of the requested fee. *See Fleisher v. Phoenix Life Ins. Co*., No. 11 Civ. 8405 (CM), 2015 WL 10847814, at *20 (S.D.N.Y. Sept. 9, 2015) (awarding fees of one-third due, in part, to the complexity of issues).

### 3.   *Risks of Litigation*

"The third *Goldberger* factor – *i.e.*, the risk to counsel of pursuing his case on a contingency basis – is 'perhaps the foremost' factor to be considered in determining whether to award an enhancement." *Melito*, 2017 WL 3995619, at *18 (citing *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005)). Here, Class Counsel agreed to prosecute this action without any assurance of payment for their services; litigating this case on a wholly contingent basis in the fact of significant risk and agreeing to advance all necessary expenses and to receive a fee only if there was a recovery. McEntee Decl. ¶ 62; Fitapelli Decl. ¶¶ 17, 20. *See Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479 (S.D.N.Y. 2013) ("Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees.") (internal quotation and citation omitted); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y.

2014) (quoting *Goldberger*, 209 F.3d at 55) ("risk should be considered 'as of when the case is filed.'"). The retainer agreement signed by Plaintiff reflects the contingency fee arrangement. Fitapelli Decl. ¶ 20. Class Counsel have invested considerable time and money prosecuting this action; their out-of-pocket costs are approximately $24,756.06. *See* McEntee Decl. ¶ 66; Fitapelli Decl. ¶ 26. Class Counsel continue to represent plaintiffs on a wholly contingent basis despite, unfortunately, having suffered several major (and very expensive) losses in class action cases over the years. Fitapelli Decl. ¶¶ 20-25.

Moreover, TCPA cases are, by their very nature, risky. The TCPA does not provide for attorneys' fees, unlike other statutory claims. Moreover, "the average TCPA case carries a 43% chance of success." *In re Capita One TCPA Litig.l*, 80 F. Supp. 3d at 806. This case is no different. Plaintiff risked losing on a motion to certify the class. *Cf., e.g.*, *Vigus*, 274 F.R.D. at 235 (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number" (internal citations omitted)), *with Green*, 2009 WL 1810769, at *2 (in a fax blast case, "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification." *and Agne,* 286 F.R.D. at 567 ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

Plaintiff also faced a future motion for summary judgment on the issue of liability, since Raymours argued its text-messaging platform does not meet the legal definition of an

ATDS. If Plaintiff could overcome this hurdle and succeed to case to verdict, Raymours would likely appeal, which "could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

Moreover, Plaintiff still would have to collect on any judgment. It is likely that Raymours would file bankruptcy if a much larger judgment was entered. Thus, there was substantial risk that any victory at trial would be hollow, leaving class members with nothing. *See Chas. Pfizer & Co.,* 314 F. Supp. at 743-44 ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Eastman Kodak Co.,* 603 F.2d at 309 (reversing $87 million judgment after trial). As a result, this factor supports Class Counsel's attorneys' fees request.

### 4. *Quality of the Representation*

"The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the Class through the efforts of such counsel." *Maley*, 186 F. Supp. 2d at 373. Moreover, "[t]o determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). Here, the non-reversionary recovery obtained – $4,250,000 – is substantial in light of the risks of litigation. *See supra* section (I)(C)(7). Furthermore, Class Counsel are experienced class action litigators who have successfully prosecuted complex class action cases, including TCPA class actions such as this one. *See* McEntee Decl. ¶¶ 45-47; Fitapelli Decl. ¶ 5. Therefore, this factor weighs in favor of granting the requested fees.

### 5.   *The Fee is Reasonable in Relation to the Settlement*

Class Counsel's request for one-third of the fund is "fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere." *In re Marsh ERISA Litig.,* 265 F.R.D. at 149 (awarding $11,665,500 fee out of $35 million settlement fund). The requested fee is further reasonable given that the settlement is non-reversionary, meaning that Raymours will not receive money back.

Courts in this Circuit have routinely approved requests for one-third of the fund in cases with settlement funds similar or substantially larger than the present action. *See, e.g.*, *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. at 326 (awarding $14.2 million fee out of $42 million settlement fund); *Zorrilla*, 2018 WL 1737139, at *2 (approving 1/3 of $19.1 million settlement fund); *Maley*, 186 F. Supp. 2d at 370–71 (awarding $3,832,950 fee out of $11.5 million settlement fund); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637 GRB, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving 1/3 of $9,900,000); *Becher*, 64 F. Supp. 2d at 182 (awarding $2,583,333 fee out of $7,750,000 settlement fund); *Karic*, 2016 WL 1745037, at *8 (approving 1/3 of $5,500,000 and noting that "[c]ourts in this Circuit often approved requests for attorneys' fees amounting to 33.3% of a settlement fund"); *Hadel v. Gaucho, LLC*, 193 F. Supp. 3d 243, 245 (S.D.N.Y. 2016) (approving 1/3 of $2,375,000); Moreover, this Court recently awarded one-third of a gross settlement fund. *See* **Ex. H**, *Souza*, ECF No. 34 (Netburn, J.) (granting one-third of gross fund).[5] As such, this factor weighs in favor of approving the requested fee award.

---

[5] Courts outside the Second Circuit have likewise approved one-third of larger settlement funds. *See, e.g., Hageman*, 2015 WL 9855925, at *4 (awarding $15 million fee out of $45 million common fund); *Desai*, ECF No. 243 (awarding 1/3 of $15 million dollar fund); *supra* section (IV)(A).

### 6.  *Public Policy Considerations*

Public policy considerations also weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399. When individuals' damages are small, "it [is] less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations, which would certainly exceed their recoveries manifold." *Frank,* 228 F.R.D. at 181. Thus, "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *In re Colgate-Palmolive Co. ERISA Litig*., 36 F. Supp. 3d at 352.

The "TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). Here, Class Counsel successfully negotiated a settlement that obtained significant monetary compensation for Class Members, fulfilling the purpose of the TCPA.

### C.  The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund.

"Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'" *Tiro*, 2013 WL 4830949, at *15. While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50.

Applying a lodestar analysis here would penalize Class Counsel for acting responsibly on behalf of the Class and obtaining a favorable outcome relatively early. In *Beckman*, for instance,

the court noted that a relatively low lodestar amount (the fee award was about 6.3 times the lodestar) "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular[ly] where, as here, the settlement amount is substantial." 293 F.R.D. at 482. This sentiment was echoed by Judge Ellis, when considering a substantial settlement where the fee award was about 5 times the lodestar:

> "[T]he proportion of the lodestar is probably higher if you're able to effectuate a settlement earlier and certainly that's to be encouraged, you could have litigated longer and [t]he proportion would have been less but that would not be a good result for either the plaintiffs, the defendants, either counsel or the class members. So I think you should not take the opportunity to penalize people for being efficient."

Ex. J, *Hadel et al. v. Gaucho LLC et al.*, No. 15 Civ. 3706 (RLE), hr'g tr. at p. 9-10 (S.D.N.Y. June 30, 2016) (awarding one-third of $2,375,000 settlement).

Courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved." *Parker v. Jekyll & Hyde Entm't Holdings,* LLC, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010). These factors support approval.

With respect to the first two factors, Class Counsel spent approximately 1,199.85 hours litigating and settling this matter. McEntee Decl. ¶ 64; Fitapelli Decl. ¶¶ 14, 18. The hours worked by Class Counsel result in a lodestar of approximately $539,417.50. McEntee Decl. ¶ 44. Moreover, "[b]ecause class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Beckman*, 293 F.R.D. at 482.

Class Counsel's request for one-third of the Fund (approximately 2.63 times their "lodestar") is reasonable in light of the excellent result achieved for the Class and well within the multiplier range awarded by courts in the Second Circuit and this District. Other courts have approved higher multipliers than 2.63. *See, e.g.*, *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (granting multiplier of 7.6 and stating that the class counsel should not be penalized "for achieving an early settlement"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting 6.8 multiplier); *Beckman*, 293 F.R.D. at 483 (granting 6.3 multiplier); *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Hadel*, 193 F. Supp. 3d at 245 (granting multiplier of 5); *Puglisi*, 2015 WL 4608655, at *1 (awarding multiplier of 4.86); *Suarez*, 2018 WL 1801319 at *2 (approving 4.62 multiplier in claims made settlement); *Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC) (RLE), 2015 WL 3916161, at * 1 (S.D.N.Y. April 28, 2015) (granting multiplier of 4.5 in a claims made settlement); *Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six.").

Circuit Judge Chin, while presiding before the Southern District of New York in 2016, stated that "[t]here is commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Sykes*, 2016 WL 3030156, at *17. When considering permissible multipliers, Judge Chin stated as follows:

> The multiplier here is 3.3, which is consistent with other cases in the Second Circuit. *See, e.g*., *Wal-Mart Stores*, 396 F.3d at 123 ("multipliers of between 3 and 4.5 have become common"); *Davis* [*v. J.P. Morgan Chase & Co.*], 827 F. Supp. 2d [172,] 185 [(W.D.N.Y. 2011)] (awarding a multiplier of 5.3 times the lodestar); *In re Telik, Inc. Sec. Litig*., 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent

29

litigation, lodestar multipliers of over 4 are routinely awarded by courts, including this Court.").

*Id.*, at *16. Therefore, Class Counsel's request for $1,416,666.67 is thus well within the range of reasonableness. With respect to the third and fourth factors, as described herein, Class Counsel believe that their performance was very good and achieved excellent results for the Class.

### D. Class Counsel Are Entitled To Reimbursement Of Their Litigation Expenses.

As explained in the notice, Class Counsel seek reimbursement of $24,756.06 in necessary litigation costs and expenses. McEntee Decl. ¶ 66; Fitapelli Decl. ¶ 26. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Sukhnandan*, 2014 WL 3778173, at *15. Given that Class Counsel's unreimbursed expenses were incidental and necessary, they should be approved.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant final certification of the Rule 23 Settlement Class, approve the Class Settlement, the service award, attorneys' fees and costs, and enter the proposed Final Order.

RESPECTFULLY SUBMITTED AND DATED this 6th day of August, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email:  bterrell@terrellmarshall.com
Jennifer Rust Murray
Email:  jmurray@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email:  amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Joseph A. Fitapelli (JAF9058)
Email: jfitapelli@fslawfirm.com
Brian S. Schaffer (BS7548)
Email: bschaffer@fslawfirm.com
Armando A. Ortiz (AO2120)
Email: aortiz@fslawfirm.com
FITAPELLI & SCHAFFER, LLP
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375
Facsimile: (212) 481-1333

*Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I, Adrienne D. McEntee, hereby certify that on August 6, 2019, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

> Steven R. Aquino
> Email:  saquino@hahnhessen.com
> John P. Amato, Sr.
> Email: jamato@hahnhessen.com
> HAHN & HESSEN LLP
> 488 Madison Avenue
> New York, New York 10022
> Telephone: (212) 478-7200
> Facsimile: (212) 478-7400
>
> Eric Robert Fish
> Email: efish@bakerlaw.com
> BAKER & HOSTETLER LLP (NYC)
> 45 Rockefeller Plaza
> New York, New York 10111
> Telephone: (212) 589-4647
> Facsimile: (212) 589-4201
>
> Paul G. Karlsgodt
> Email: pkarlsgodt@bakerlaw.com
> BAKER & HOSTETLER LLP
> 1801 California Street, Suite 4400
> Denver, Colorado 80202
> Telephone: (303) 861-0600
> Facsimile: (303) 861-7805
>
> Edward T. Groh
> Email: egroh@raymourflanigan.com
> RAYMOUR & FLANIGAN
> 1314 U.S. Highway 22
> Phillipsburg, New Jersey 08865
> Telephone: (908) 454-4953
> Facsimile: (908) 343-2002
>
> *Attorneys for Defendant*

DATED this 6th day of August, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By:   /s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email:  amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiff*