UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SCOTT BORECKI, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

RAYMOURS FURNITURE COMPANY,
INC., d/b/a RAYMOUR & FLANIGAN,

Defendant.

NO. 1:17-cv-01188 (LAK) (SN)

**DECLARATION OF ADRIENNE D. McENTEE IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR FINAL APPROVAL**

I, Adrienne D. McEntee, declare as follows:

1.      I am a member of the law firm of Terrell Marshall Law Group PLLC ("TMLG"),
counsel of record for Plaintiff in this matter. I am admitted to practice before this Court and am a
member in good standing of the bar of the state of Washington. I respectfully submit this
declaration in support of Plaintiff's motion for final approval of the settlement of the above-
captioned class action.

2.      Along with Fitapelli & Schaffer, LLP ("F&S"), TMLG has been responsible for
prosecuting Plaintiff's claims.

**PROCEDURAL HISTORY**

**Counsel's Investigation, Filing of the Complaint, and Motions Practice**

3.      Before initiating the instant action, TMLG and F&S (together, "Class Counsel")
conducted a thorough investigation into this potential matter, including researching into the

1

business operations and corporate structure of Raymours Furniture Company, Inc. d/b/a Raymour & Flanigan ("Raymours" or "Defendant"), factual investigation and legal research as to the underlying merits of the claims and possible defenses, factual and legal research into the proper measure of damages, and the likelihood of class action certification. Moreover, Class Counsel conducted an in-depth interview with Scott Borecki, the named Plaintiff in this action, regarding the text messages he received. Class Counsel also conducted a thorough web search regarding complaints posted online regarding Defendant's texting campaign.

4.      Plaintiff initiated this class action on February 16, 2017 when he filed a Complaint in the United States District Court for the Southern District of New York entitled *Borecki v. Raymours Furniture Company, Inc. e/b/a Raymour & Flanigan*, No. 17 Civ. 01188 (S.D.N.Y.) ("the Action"). Raymours is a leading furniture retailer in the United States and is the largest furniture company on the East Coast. Plaintiff alleged that to market its services and increase its customer volume, Raymours used an automatic telephone dialing system ("ATDS") to send advertising text messages to him and a class of consumers without prior express written consent to do so. *See* Complaint, ECF No. 1, generally.

5.      Shortly after the filing of the Action, Defendant filed a Motion to Compel Arbitration on March 22, 2017. *See* ECF No. 11. After Plaintiff filed a response in opposition and Defendant filed a reply memorandum in support of their motion (ECF Nos. 19, 20), Magistrate Judge Netburn denied Defendants' Motion to Compel Arbitration on June 21, 2017. ECF No. 21.

6.      Defendant objected to Judge Netburn's Report and Recommendations on July 19, 2017. ECF No. 24. Plaintiff filed his response to Defendant's objections on August 16, 2017. ECF No. 25.

7.     On November 28, 2017, Judge Kaplan affirmed Judge Netburn's order denying Defendants' Motion to Compel Arbitration. ECF No. 29. Defendants then appealed to the Second Circuit, *Borecki v. Raymours Furniture Company, Inc.*, No. 17-3996 (2d Cir.) ("the Appeal"), requesting that the Second Circuit reverse the District Court's ruling on the Motion to Compel Arbitration on December 13, 2017. ECF No. 36.

8.     On December 13, 2017, Defendants filed a Motion to Stay the Proceedings with the District Court pending the outcome of the Appeal, which Judge Kaplan denied. ECF Nos. 37, 38. Defendant then filed a Motion to Stay the Proceedings directly with the Second Circuit on December 18, 2017, to which Plaintiff responded. Appeal ECF Nos. 8, 13. The Second Circuit Court of Appeals denied Defendants' Motion to Stay the Proceedings on December 28, 2017. Appeal ECF No. 30.

9.     On February 13, 2018, Defendant filed its Appellant Brief with the Second Circuit. Appeal ECF Nos. 51.

10.     On May 11, 2018, Plaintiff filed his Appellee Brief in Opposition with the Second Circuit. Appeal ECF No. 64.

11.     The Appeal has been fully briefed, but the Parties agreed to withdraw the appeal without prejudice to reinstatement, pending the approval of the Settlement Agreement.

**Discovery, Mediation, and Settlement Negotiations**

12.     In addition to the motion practice above, the Parties actively litigated this action for well over a year. Specifically, the Parties appeared before Judge Netburn for an Initial Pretrial Conference on December 11, 2017. After this Initial Pretrial Conference, Plaintiff propounded written discovery requests targeting Raymours' texting policies and practices, correspondence relating to the relationship between Raymours and its vendors, and the texting data necessary to

identify class members and establish the scope of the alleged violations. In response to these discovery demands, Raymours produced approximately 190,000 pages of documents and correspondence, including email correspondence that shed light on Raymours' role in its texting program. In addition, Raymours produced substantial excel databases containing, among other items, cell phone numbers and text messages sent. Plaintiff thoroughly analyzed the data for issues relating to consent.

13.    Likewise, Defendant propounded written discovery demands to Plaintiff. Plaintiff provided written responses and produced relevant documents in his control.

14.    During the course of written discovery, counsel for the Parties participated in numerous telephone and email correspondence regarding the production of electronically stored information relevant to Plaintiff's propounded discovery.

15.    Raymours' production was instrumental to Plaintiff in deposing Raymours' Rule 30(b)(6) designees. Defendants designated three witnesses in response to Plaintiff's Rule 30(b)(6) Notice of Deposition. Class Counsel traveled to Syracuse, New York to take the depositions of these designees, which took place from April 24, 2018 to April 25, 2018. After these depositions, Class Counsel planned to take at least one more deposition of a corporate designee. Raymours took Plaintiff's deposition on June 1, 2018.

16.    Class Counsel also undertook third party discovery, specifically relating to Raymours' vendor involved in the telemarketing campaign at issue in this action. Class Counsel served a third-party subpoena to the vendor, and after the Rule 30(b)(6) depositions, began preparing to take the deposition of the vendor's corporate designee. The vendor had several objections to the scope of discovery, which Class Counsel resolved through telephone calls and email correspondence.

**Mediation**

17.     After engaging in substantial discovery, the Parties agreed to mediate with Bennett G. Picker, Esq., an experienced class action mediator.

18.     As a result of the extensive discovery that had been completed, and the analysis of the data Raymours produced, by the time the Parties commenced settlement negotiations, they understood the size of the Class, and the extent of damages.

19.     Prior to the mediation, the parties submitted to Mr. Picker detailed mediation statements and participated in several phone calls with Mr. Picker and opposing counsel.

20.     The Parties attended mediation on June 21, 2018 at the law offices of Stradley Ronon Stevens & Young, LLP in Philadelphia, Pennsylvania. After a full day of mediation, the Parties were unable to reach a settlement, but prior to breaking, agreed to consider a mediator's proposal.

21.     On June 26, 2018, the Parties accepted the mediator's proposal in principle, and began working towards drafting and signing a settlement term sheet. After several weeks of negotiating, the Parties executed the settlement term sheet on August 10, 2018. At all times the settlement discussions were arms-length and adversarial in nature.

22.     The parties subsequently negotiated the Class Action Settlement Agreement and Release, attached hereto as **Exhibit A**. Class Counsel was well-informed about the strengths and weaknesses of their case at the time they reached settlement in the case. I believe the settlement is fair, reasonable, adequate, and in the best interest of the Class as a whole.

23.     In my experience, the settlement is an excellent recovery for Class Members, particularly in light of the risks involved in this case. We are confident in the strength of the case and the ability to prevail both at class certification and on the merits. However, Raymours insists

that the Court will ultimately conclude that the text messages were not sent from an ATDS, and Plaintiff risks losing this issue on summary judgment. Indeed, following the D.C. Circuit's decision in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), many courts have issued divergent opinions regarding the factors that qualify equipment as ATDS. Raymours also contends that it had prior written express consent to send texts to at least some of the Class Members. Courts have offered differing opinions in other cases under the TCPA regarding whether questions of consent require an individualized inquiry, and therefore whether class certification is appropriate. Finally, Raymours is also confident it would have prevailed on appeal in the Second Circuit regarding whether Plaintiff's individual claims must be heard in arbitration, outside of the class action context. While Plaintiff is confident that the Second Circuit would have upheld the decision, an order reversing the district court would have eliminated any relief to Class members.

24.    Although the Parties completed substantial discovery, work remained. Substantial expert discovery, including depositions, would be required if the case proceeded.

## PRELIMINARY APPROVAL AND NOTICE TO CLASS MEMBERS

25.    On September 13, 2018, Plaintiff filed his Unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Plaintiff's Proposed Notice of Settlement and Class Action Settlement Procedure ("Preliminary Approval Motion"). *See* ECF Nos. 57. As part of this filing, Plaintiff provided **Exhibit 7** to the Settlement Agreement, which was comprised of Class Members' telephone numbers, to the Court under seal given the confidential nature of the information. *See* ECF No. 58.

26.     Likewise, on September 14, 2018, the Parties filed a stipulation in which Defendant withdrew its pending appeal before the Second Circuit, which was so-ordered by the Second Circuit. *See* ECF 59.

27.     On September 19, 2018, the Parties consented to Magistrate Judge Netburn for purposes of both the Preliminary Approval Motion, and in the event the Court granted preliminary approval, for the Motion for Final Approval. *See* ECF No. 60.

28.     The Court held a hearing on Plaintiff's Preliminary Approval Motion on February 12, 2019. Prior to this hearing, Class Counsel updated the proposed Notice documents with the Court's previously communicated edits on February 7, 2019. *See* ECF No. 81.

29.     The Court granted Plaintiff's Preliminary Approval Motion on February 22, 2019, directed that Notice be sent to Class Members, and set September 10, 2019 as the date for the final fairness hearing. **Ex. B**, ECF No. 83.

30.     On February 28, 2019, the Court amended its Preliminary Approval Order, extending the time for Class Members to submit claims, object, or request exclusion to June 22, 2019. **Ex. B**, ECF No. 85.

31.     On March 22, 2019, the Claim Administrator sent the Court-approved Postcard Notice to 231,191 Class Members. *See* **Ex. C**, Declaration of Samantha Ries ("Ries Decl.") ¶ 6. In addition, the Claim Administrator sent 121,493 email notices to Class Members with valid email addresses. *Id.* ¶ 7. The Claim Administrator also activated the settlement administration website, www.RaymoursTCPASettlement.com. *Id.* ¶ 13. This website provided Class Members with general information about the proposed settlement, had links to certain Court documents related to the matter, and allowed Class Members to file a claim form online, and print a fillable claim form to return via mail. *Id*. The Claims Administrator also activated a toll-free number that allowed

Class Members to hear information about the settlement, answers to frequently asked questions, and also to speak with a call center representative. *Id.* ¶ 12.

32.     The Claim Administrator estimates that the physical mailing and email campaign in this matter alone resulted in at least a 95% reach to Class Members. *Id.* ¶ 11.

33.     TMLG also received and processed telephone calls from Class Members during the notice period. TMLG assisted these callers by providing information regarding the settlement, their options, and also requested additional claim forms for Class Members from the Claim Administrator.

34.     To date, the Claim Administrator received a total of 31,592 valid claim forms. Ries Decl. ¶ 14. This resulted in a 13.7% participant rate.

35.     To date, only five (5) Class Members opted out of the Settlement. *Id.* ¶ 18.

36.     No Class Members objected to the Settlement. *Id.* ¶ 19.

37.     The Claim Administrator estimates that settlement awards will be $75.19 per claimant. *Id.* ¶ 26, **Ex. E** attached to the Ries Decl. If the Court allows late claims, the settlement awards will be $74.47 per claimant. *Id.*

## <u>SERVICE AWARD</u>

38.     Subject to Court approval, Class Counsel also seek a service award of $40,000.00 to the Plaintiff in addition to his individual award in recognition of the services he rendered on behalf of the Class. **Ex. A**, Settlement Agreement ¶ 4.3.

39.     Plaintiff was instrumental to the initiation and prosecution of this action and expended considerable time and effort to assist Class Counsel with this case. His services included, but were not limited to: informing counsel of the facts initially and as the case progressed; assisting with the drafting of the complaint; providing information about his interaction with Raymours;

responding to written discovery; sitting for his deposition; and in the event settlement was not reached, testifying at trial. *See* **Ex. D**, Declaration of Scott Borecki ("Borecki Decl.") ¶¶ 9-10.[1] Moreover, Plaintiff rejected an individual settlement offer of $60,000, and a $15,000 offer of judgment (and did so at the risk and exposure that accompanies rejecting a Rule 68 offer of judgment), for the benefit of the Class. *Id.* ¶ 11. In my opinion, Plaintiff's rejection of these offers was instrumental to our ability to obtain class-wide relief in this matter. Plaintiff's support of this settlement is independent of any service award and not conditioned on the Court awarding any particular amount or any award at all. **Ex. D**, Borecki Decl. ¶ 13.

40.    Plaintiff also undertook a significant risk that he would be retaliated against or otherwise prejudiced by his bringing of this lawsuit, as his name and information in this lawsuit is readily available through simple internet and Google searches. In addition, Plaintiff was identified in newspaper articles, including Law 360, www.leagle.com, and sdnybusinesslitigationblog.com, thereby increasing this risk. As a result, Plaintiff took substantial risks in prosecuting the action.

41.    The Class Notice materials informed Class Members the amount to be paid as a service award to Plaintiff, in recognition of the services he provided to the Class. **Ex. C**, Ries Decl., **Ex. A,** Class Postcard Notice at 1; **Ex. B**, Email Notice at 1; **Ex. C**, Website Notice ¶ 14. No Class Member objected to the service award, **Ex. C**, Ries Decl. ¶ 19, and Plaintiff has no conflict with any Class Member.

## ATTORNEY'S FEES & EXPENSES

42.    Pursuant to the Settlement Agreement, Class Counsel requests attorneys' fees equal to one-third of the Settlement Fund, or $1,416,666.67, and expenses of $24,756.06. **Ex. A**, Settlement Agreement ¶¶ 4.2.

---

[1] This declaration was filed with the Court on February 7, 2019. *See* ECF No. 81-5.

43.     The notice materials informed Class Members that Class Counsel woudl apply to the Court for attorneys' fees of one-third of the Settlement Fund ($1,416,666.67) and expenses not to exceed $30,000.00. **Ex. C**, Ries Decl., **Ex. A,** Class Postcard Notice at 1; **Ex. B**, Email Notice at 1; **Ex. C**, Website Notice ¶ 14.

44.     Class Counsel's request for one-third of the fund, or $1,416,666.67 is 2.63 times their current lodestar of $539,417.50.[2]

## BACKGROUND AND EXPERIENCE

45.     TMLG is a law firm in Seattle, Washington, that focuses on complex civil and commercial litigation with an emphasis on consumer protection, product defect, civil rights, employment, wage and hour, real estate, and personal injury matters. The attorneys of TMLG have extensive experience in class actions, collective actions, and other complex matters. They have been appointed lead or co-lead class counsel in numerous cases at both the state and federal level. They have prosecuted a variety of multi-million-dollar consumer fraud, civil rights, wage and hour, and product defect class actions. The defendants in these cases have included companies such as Wal-Mart, Microsoft, Best Buy, Toyota, Honda, Sallie Mae, Comcast, ABM Industries, Inc., AT&T, T- Mobile USA, Weyerhaeuser, Behr Products, American Cemwood, Bank of America, Discover Financial Services, Capital One, and HSBC.

46.     TMLG has actively and successfully litigated class action lawsuits under the Telephone Consumer Protection Act. TMLG has taken the lead in some of the largest nationwide class actions filed under the TCPA, including those filed against large financial institutions such as Sallie Mae, Bank of America, Discover Financial Services, Capital One, and HSBC. My partner,

---

[2] This figure is both TMLG and F&S' lodestar combined. Broken down, the lodestar is as follows: $367,052.50 (TMLG) and $172,365.00 (F&S). *See* Fitapelli Decl. ¶ 18.

Beth E. Terrell, was appointed co-lead counsel in two of the largest MDLs involving TCPA claims,

*In re Capital One Telephone Consumer Protection Act Litigation*, 1:12-cv-10064 (N.D. Illinois),

and *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*, MDL

No. 1:13-MD-2493 (N.D. W. Va.).

47.    TMLG is litigating or has settled the following TCPA class actions:

- *In re Capital One Telephone Consumer Protection Act Litigation*— Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent. I served as court-appointed interim co-lead counsel. The court granted final approval of a $75,455,098.74 settlement in February 2015.

- *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*—Filed on behalf consumers who received automated, prerecorded solicitation telephone calls on their residential and business telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, the Washington Automatic Dialing and Announcing Device statute, RCW 80.36.400, and the Washington Consumer Protection Act, RCW 19.86 *et seq.* I serve as co-lead counsel in the MDL. The case settled on a class-wide basis in 2017 for $28,000,000, and final approval was granted on June 12, 2018.

- *Abante Rooter and Plumbing, Inc., et al. v. Alarm.com Incorporated, et al.*—TMLG represents two certified classes of consumers who received automated solicitation telephone calls on their cellular and residential telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* The case settled on a class-wide basis for $28,000,000. Final approval is pending in the United States District Court for the Northern District of California.

- *Snyder v. Ocwen Loan Servicing, LLC*—Filed on behalf of consumers who received automated collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* The case settled on a class-wide basis for $21,500,000 and was finally approved in the United States District Court for the Northern District of Illinois on June 4, 2019.

- *Abante Rooter and Plumbing, Inc. v. Pivotal Payments Inc*— Filed on behalf of small businesses that received automated solicitation

telephone calls to their cell phones. The case settled on a class-wide basis for $9 million and final approval was granted by the United States District Court for the Northern District of California in October 2018.

- *Charvat v. Plymouth Rock Energy*—Filed on behalf of consumers who received automated solicitation telephone calls on their cellular and residential telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and/or to telephone numbers registered on the National-Do-Not-Call Registry. The case was finally approved in the United States District Court for the Eastern District of New York on July 31, 2018.

- *Melito v. American Eagle Outfitters, Inc.*—Filed on behalf of consumers who received spam text messages on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* The case settled on a class-wide basis in 2016 for $14,500,000, and final approval was granted by the United States District Court for the Southern District of New York in September 2017. The United States Court of Appeals for the Second Circuit affirmed the settlement on April 30, 2019. *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019)

- *Ashack v. Caliber Home Loans*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* TMLG negotiated a nationwide settlement in 2016 for $2,895,000, and final approval was granted in June 2017.

- *Joseph v. TrueBlue Inc.*—Filed on behalf of consumers who received spam text messages on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* The case settled on a class-wide basis in 2016 for $5,000,000, and final approval was granted in March 2017.

- *Gehrich v. Chase Bank USA*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* TMLG negotiated a $34,000,000 nationwide settlement; final approval was granted in March 2016.

- *Ott v. Mortgage Investors Corporation*—Filed on behalf of consumers who received automated solicitation telephone calls on their cellular and residential telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et*

*seq*. TMLG negotiated a $7,483,600 class-wide settlement and final approval was granted in January 2016.

- *Wilkins v. HSBC Bank Nevada, N.A.*—Filed on behalf of individuals who alleged that HSBC made prerecorded calls using an automatic dialing system. The case settled on a class-wide basis in 2014 for $39,975,000, and final approval was granted in March 2015.

- *Rose v. Bank of America Corp.*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. TMLG negotiated a nationwide settlement of $32,083,905, which was granted final approval in August 2014.

- *Steinfeld v. Discover Financial Services*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. TMLG negotiated an $8.7 million settlement, which was granted final approval in March 2014.

- *Arthur v. Sallie Mae, Inc.*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. TMLG negotiated a $24.15 million nationwide settlement, and final approval was granted in 2012.

**Qualifications of TMLG Attorneys and Staff**

48.    I am the lead attorney from TMLG in this case. I concentrate my practice in complex litigation, including the prosecution of consumer and defective product class actions.

49.    I graduated from the University of Washington School of Law in 2003, where I was a member of the Pacific Rim Law and Policy Journal and Moot Court Honor Board. Prior to joining TMLG, I was a member of Tousley Brain Stephens PLLC, where I practiced for five years. Before entering private practice, I worked with the King County Prosecuting Attorney's Office, where I prosecuted a broad range of crimes. Since my admission to the bar, I have been a member of the

Washington State Bar Association and Washington Women Lawyers' Judicial Evaluation Committee.

50.     In 2018 and 2019, I was named to the Washington Super Lawyers list.

51.     **Beth E. Terrell** is a founding member of TMLG. She received a B.A., *magna cum laude*, from Gonzaga University in 1990. In 1995, Ms. Terrell received her J.D. from the University of California, Davis School of Law, Order of the Coif. Prior to forming TMLG in May 2008, she was a member of Tousley Brain Stephens PLLC. Ms. Terrell is a frequent speaker at legal conferences on a wide variety of topics including consumer class actions, employment litigation, and electronic discovery, and has been awarded an "AV" rating in Martindale Hubble by her peers. Ms. Terrell is also actively involved in several professional organizations and activities. For example, she currently is an Eagle Member of the Washington State Association of Justice ("WSAJ"), and serves as the Chair of its Consumer Protection Section. She is also the current Chair of the Washington Employment Lawyers Association and the President of the Public Justice Foundation. Ms. Terrell has been repeatedly named to the annual Washington Super Lawyers list. She has also been named to their Top 100 Washington Super Lawyers list and their Top 50 Women Super Lawyers list.

52.     **Blythe Chandler** is a member of TMLG. She concentrates her practice on consumer class actions and appeals. Before joining TMLG she served as a law clerk to the Honorable Betty B. Fletcher, Senior United States Circuit Judge for the Ninth Circuit Court of Appeals and to the Honorable John C. Coughenour, Senior United States District Judge for the Western District of Washington. As a law student, she served as an extern to the Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington and the Honorable Steven C. González in the King County Superior Court. Ms. Chandler is a member of the

Washington Employment Lawyers Association (WELA) Amicus Committee. She is an Eagle member of the Washington State Association for Justice (WSAJ) and currently co-chairs WSAJ's Consumer Protection Section.

53.    **Jennifer Boschen** is a senior paralegal at TMLG with 18 years of experience in the legal field.

54.    **Rachel Hoover** was a senior paralegal at TMLG from 2011 to 2018 and had worked in the legal field since 2001.

55.    **Eden B. Nordby** was a senior paralegal at TMLG from 2008 to 2019, when she entered law school.

56.    **Jodi Nuss** has been a senior paralegal at TMLG since 2018 and has worked in the legal field since 2010.

57.    **Heather Brown** has been a paralegal at TMLG since 2018. Ms. Brown has worked in the legal field since 2002.

58.    **Bradford Kinsey** has been a legal secretary at TMLG since 2009 and has nearly 30 years of legal experience.

59.    **Holly M. Rota** is a legal secretary at TMLG with 13 years of experience.

60.    **Rachel Laux** has been a legal assistant at TMLG since 2019.

61.    The work performed by paralegals and legal assistants was work that I or another attorney would have had to perform absent such assistance. In the case of Ms. Boschen, Ms. Hoover, Ms. Nordby, and Ms. Nuss, the work required an understanding of the facts and claims at issue in the case. The work of Mr. Kinsey, Ms. Rota, Ms. Brown, and Ms. Laux required an understanding of relevant legal rules and concepts. All these staff members are qualified to perform substantive legal work based on their training and past experience working for attorneys.

**Time Spent on the Litigation**

62.     TMLG has worked with no guarantee of being compensated for its time and efforts. Payment of TMLG's fees has always been contingent on successfully obtaining relief for Plaintiff and proposed class members. As a result, there was a substantial risk of non-payment, particularly in light of the challenges inherent in this type of case. Work on this case has necessarily been to the exclusion of work on other matters that likely would have generated fees. TMLG has also been denied use of the fees it earned over the course of this case.

63.     As of the filing of the instant motion, TMLG has spent 759.1 hours litigating and settling this case, which includes approximately 562 attorney hours, and 157 paralegal and legal assistant hours. Throughout the litigation, TMLG has been available to clients via phone and email. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney participating in the case. TMLG keeps contemporaneous billing records for all matters.[3] Class Counsel's fee request is not based solely on time and effort already expended, it is also meant to compensate TMLG for time that we will be required to spend administering the settlement in the future, and for time with respect to preparation for the fairness hearing and administering the Settlement.

64.     The chart below summarizes the specific TMLG attorneys and staff members, their hourly rates, and the total time each devoted to this matter.

| TERRELL MARSHALL LAW GROUP, PLLC | | | |
|---|---|---|---|
| **INDIVIDUAL, POSITION** | **HOURLY RATE** | **TOTAL HOURS** | **FEES** |
| Beth E. Terrell, Partner | $750.00 | 14.5 | $10,875.00 |
| Adrienne D. McEntee, Partner | $575.00 | 475 | $273,125.00 |

---

[3] Contemporaneous billing records for TMLG are attached hereto as **Exhibit E**.

| | | | |
|---|---|---|---|
| Blythe Chandler, Partner | $425.00 | 72.6 | $30,855.00 |
| Jennifer J. Boschen, Paralegal | $275.00 | 135.9 | $37,372.50 |
| Jodi Nuss, Paralegal | $275.00 | 21.6 | $5,940.00 |
| Rachel E. Hoover, Paralegal | $275.00 | 10.1 | $2,777.50 |
| Eden B. Nordby, Paralegal | $275.00 | 1.6 | $440.00 |
| Heather Brown, Paralegal | $225.00 | 1.7 | $382.50 |
| Bradford Kinsey, Legal Secretary | $225.00 | 11.5 | $2,587.50 |
| Holly M. Rota, Legal Secretary | $225.00 | 9.9 | $2,227.50 |
| Rachel Laux, Legal Assistant | $100.00 | 4.7 | $470.00 |
| **TOTAL** | | **759.1** | **$367,052.50** |

65.     The lodestar calculations above are based on reasonable hourly rates. Plaintiff's counsel set their rates for attorneys and staff members based on a variety of factors, including among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members. Courts have approved fee requests by TMLG based on these rates.

**Litigation Costs and Expenses**

66.     Class Counsel also incurred the following out-of-pocket expenses prosecuting the litigation, which were incidental and necessary to the representation of the Class:

| Grand Total: $24,756.06 | |
|---|---|
| **Terrell Marshall Law Group** | |
| Fed Ex | $199.99 |
| Transcripts | $4,727.54 |
| Filing & Associated Expenses | $1,222.50 |

| Mediator Fees | $7,050.00 |
|---|---|
| Travel & Lodging | $6,764.42 |
| **TOTAL** | **$19,964.45** |

| **Fitapelli & Schaffer LLP** | |
|---|---|
| Filing Fees and Associated Expenses | $749.75 |
| Federal Express | $185.24 |
| Transcripts | $804.35 |
| Investigation Costs | $100.00 |
| Deposition, Travel, & Accommodations | $2,952.27 |
| **TOTAL** | **$4,791.61** |

## EXHIBITS

67.    Attached as **Exhibit A** is a true and correct copy of the Parties Settlement Agreement, which was fully executed on September 12, 2018.

68.    Attached as **Exhibit B** is a true and correct copy of the Order granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement in *Borecki v. Raymours Furniture Company*, No. 17 Civ. 01188 (LAK)(SN), ECF Nos. 83, 85 (S.D.N.Y. Feb. 28, 2019).

69.    Attached as **Exhibit C** is a true and correct copy of the Declaration of Samantha Ries, dated August 6, 2019, along with attached **Exhibits A-E**.

70.    Attached as **Exhibit D** is a true and correct copy of the Declaration of Scott Borecki, dated February 5, 2019, and filed in *Borecki v. Raymours Furniture Company*, No. 17 Civ. 01188 (LAK)(SN), ECF 81-5 (S.D.N.Y. Feb. 7, 2019).

71.    Attached as **Exhibit E** is a true and correct copy of TMLG's contemporaneous billing records for this matter.

72.    Attached as **Exhibit F** is a true and correct copy of TMLG's summary of expenses in this matter.

73.     Attached as **Exhibit G** is a true and correct copy of the Declaration of Justin Swartz filed in the matter of *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214 ECF No. 49 (S.D.N.Y.).

74.     Attached as **Exhibit H** is a true and correct copy of the Order granting final approval of class action settlement in *Souza v. Carmine's Broadway Feast Inc.*, No. 15 Civ. 04049 (SN), ECF No. 34 (S.D.N.Y. Feb. 16, 2018) (Netburn, J.).

75.     Attached as **Exhibit I** is a true and correct copy of the Order granting final approval of class action settlement in *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 05124 (RA)(SN), ECF No. 189 (S.D.N.Y. Jan. 17, 2018) (Netburn, J.).

76.     Attached as **Exhibit J** is a true and correct copy of excerpts from the transcript from the final fairness hearing in the matter of *Hadel v. Gaucho LLC*, No. 15 Civ. 3706 (RLE) (S.D.N.Y. June 30, 2016).

77.     Attached as **Exhibit K** is a true and correct copy of Plaintiff's proposed Order granting Plaintiff's Motion for Final Approval.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: August 6, 2019
        Seattle, Washington

Respectfully submitted,

/s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
 Adrienne D. Mcentee, *Admitted Pro Hac Vice*

CERTIFICATE OF SERVICE

I, Adrienne D. McEntee, hereby certify that on August 6, 2019, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

        Steven R. Aquino
        Email:  saquino@hahnhessen.com
        John P. Amato, Sr.
        Email: jamato@hahnhessen.com
        HAHN & HESSEN LLP
        488 Madison Avenue
        New York, New York 10022
        Telephone: (212) 478-7200
        Facsimile: (212) 478-7400

        Eric Robert Fish
        Email: efish@bakerlaw.com
        BAKER & HOSTETLER LLP (NYC)
        45 Rockefeller Plaza
        New York, New York 10111
        Telephone: (212) 589-4647
        Facsimile: (212) 589-4201

        Paul G. Karlsgodt
        Email: pkarlsgodt@bakerlaw.com
        BAKER & HOSTETLER LLP
        1801 California Street, Suite 4400
        Denver, Colorado 80202
        Telephone: (303) 861-0600
        Facsimile: (303) 861-7805

        Edward T. Groh
        Email: egroh@raymourflanigan.com
        RAYMOUR & FLANIGAN
        1314 U.S. Highway 22
        Phillipsburg, New Jersey 08865
        Telephone: (908) 454-4953
        Facsimile: (908) 343-2002

        *Attorneys for Defendant*

DATED this 6th day of August, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By:   /s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email:  amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiff*